**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **VEXAS CORP. d/b/a ATLAS**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES; U.S. CUSTOMS AND BORDER PROTECTION; and ERIC CHOY, in his official capacity as Executive Director, Trade Remedy Law Enforcement Directorate, Office of Trade, U.S. Customs and Border Protection,**<br><br>**Defendants.** | **Court No: 26-03809** |

# COMPLAINT

## Introduction

1. On behalf of Vexas Corp. d/b/a Atlas ("Atlas" or "Atlas Carts"), we hereby bring this action to challenge U.S. Customs and Border Protection's ("CBP's") imposition of "interim measures" in a newly-initiated Enforce and Protect Act investigation of imports of certain low speed personal vehicles. As part of this action we intend to seek a temporary restraining order and preliminary injunction preventing CBP from imposing interim measures, as the imposition of such interim measures will effectively put Atlas Carts out of business imminently.

2. This Court has confirmed that U.S. Customs and Border Protection ("CBP") is required to provide an importer "a meaningful opportunity" to be heard *before* CBP imposes interim measures in an Enforce and Protect Act ("EAPA") investigation—"not afterwards." *Superior Com. Sols., LLC v. United States*, 811 F. Supp. 3d 1363, 1376–77 (Ct. Int'l Trade 2025).

3. This Court has recently affirmed this principle in a case involving substantially the same set of facts at issue here. *See ICON EV LLC v. United States*, Ct. No. 26-02759, Slip Op. 26-42 (Ct. Int'l Trade Apr. 24, 2026) (finding that CBP did not give golf cart importer ICON a "meaningful opportunity" to contest interim measures imposed under EAPA). In *ICON*, this Court enjoined CBP from imposing interim measures pending a pre-deprivation hearing. Based on similar facts and considerations, we seek the same preliminary relief in this lawsuit as this Court afforded ICON in case no. 26-02759.

4. Rather than follow this Court's judgment, CBP ignored these prior decisions and imposed interim measures on plaintiff Atlas Carts on August 25, 2026, without any notice or meaningful opportunity to be heard.

5. The interim measures imposed on Atlas Carts are identical to the interim measures imposed on golf cart producer and importer ICON EV. This Court enjoined those measures for ICON EV. *ICON EV LLC v. United States*, Ct. No. 26-02759, Slip Op. 26-42 (Ct. Int'l Trade Apr. 24, 2026).

6. Had CBP afforded Atlas Carts the opportunity to contest the prohibitive interim measures, Atlas Carts could have demonstrated to CBP that its imported merchandise covered by the interim measures is not subject to the antidumping or countervailing duty orders.

7. The particular interim measures that CBP imposed here—likened by this Court to "sanctions," *Phoenix Metal Co. v. United States*, 2024 WL 2891503, at *9 (Ct. Int'l Trade June 10, 2024) (citing *Ford Motor Co. v. United States*, 44 F. Supp. 3d 1330, 1339 n.16 (Ct. Int'l Trade 2015))—will imminently force Atlas Carts to cease operations.

8. Unless this Court enjoins the interim measures, CBP's unwarranted interim measures will effectively escape judicial review.

## **The Parties**

9. Plaintiff Atlas Carts is a U.S.-based importer of record and ultimate consignee of imported merchandise headquartered in Austin, Texas, with production facilities in Williston, South Carolina.

10. Defendant the United States is amenable to service through the Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Department of Justice. *See* USCIT Rule 4(h).

11. Defendant U.S. Customs and Border Protection is the principal federal agency charged with conducting EAPA investigations and implementing interim measures. CBP is headquartered in the District of Columbia with its principal office located at 1300 Pennsylvania Avenue, N.W., Washington, D.C. CBP is an agency within the Department of Homeland Security. Among other duties, CBP enforces EAPA, including by imposing interim measures.

12. Defendant Eric Choy is included in this lawsuit solely in his official capacity as Executive Director of the Trade Remedy Law Enforcement Directorate ("TRLED") at CBP's Office of Trade. In that capacity, Executive Director Choy has the ultimate responsibility for the actions of TRLED, including the imposition of interim measures under EAPA. Executive Director Choy maintains an office at 1331 Pennsylvania Avenue, N.W., Washington, D.C.

## **Jurisdiction**

13. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i)(1)(D). Indeed, this Court recently affirmed jurisdiction on this basis in the ICON litigation. *See ICON EV LLC v. United States*, Ct. No. 26-02759, Slip Op. 26-55 (Ct. Int'l Trade May 26, 2026) (denying the government's motion to dismiss ICON's lawsuit for lack of subject matter jurisdiction, and finding that the Court had jurisdiction under 28 U.S.C. § 1581(i)).

14. Section 1581(i)(1)(D) confers on this Court "exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for … administration and enforcement with respect to the matters referred to in … subsections (a)–(h) of this section."

15. This civil action challenges CBP's imposition of interim measures under 19 U.S.C. § 1517(e), a law of the United States that provides for the administration and enforcement with respect to the matters referred to in subsection (c) of 28 U.S.C. § 1581, namely, section 517 of the Tariff Act of 1930 (19 U.S.C. § 1517).

16. However, jurisdiction under 28 U.S.C. § 1581(c) is manifestly inadequate because the "grave economic harm" that Atlas Carts faces cannot be remedied through this Court's review of a final evasion determination. *Hylsa v. United States*, 22 C.I.T. 44, 48 (1998).

17. Atlas Carts will suffer irreparable harm if the unlawful interim measures are not immediately enjoined. This would deprive Atlas Carts the ability to challenge—and this Court the ability to review—any adverse final determination of evasion. *See Scripps-Howard Radio, Inc. v. FCC,* 316 U.S. 4, 10 (1942) ("If the administrative agency has committed errors of law for the correction of which the legislature has provided appropriate resort to the courts, such judicial review would be an idle ceremony if the situation were irreparably changed before the correction could be made.").

18. Congress anticipated that 28 U.S.C. § 1581(c) would not be the exclusive means for obtaining judicial review of unlawful actions that CBP takes in EAPA investigations. 19 U.S.C. § 1517(g)(3) ("Nothing in this subsection shall affect the availability of judicial review to an interested party under any other provision of law.").

19. Unless this Court exercises jurisdiction, CBP will have the power to bankrupt importers through prohibitory interim measures and effectively insulate its EAPA investigations from judicial scrutiny. CBP's decision to impose the interim measures at issue here, without notice or an opportunity to be heard, constitutes reviewable final agency action within the meaning of 5 U.S.C. § 704. *See* 28 U.S.C. § 2640(e); *Bennet v. Spear*, 520 U.S. 154 (1997).

**Background**

20. Atlas Carts is a producer of electric golf carts headquartered in Austin, Texas, with electric golf cart assembly operations in Williston, South Carolina. Atlas Carts is a U.S.-based importer of record that has been importing certain models of electric golf carts (the "merchandise") since 2022.

21. In August 2025, the U.S. Department of Commerce issued antidumping and countervailing duty orders on low-speed personal transportation vehicles (LSPTVs) from the People's Republic of China. *See Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order; Amended Final Determination of Countervailing Duty Investigation and Countervailing Duty Order*, 90 Fed. Reg. 38,759 (Dep't Com. Aug. 12, 2025) ("*AD/CVD Orders*").

22. The Orders cover finished LSPTVs of Chinese origin, as well as certain unfinished or unassembled LSPTVs of Chinese origin. The scope of these Orders is defined as:

> An unfinished and/or unassembled LSPTV subject to these orders covers at a minimum a subassembly, also known as a "rolling chassis," which is typically comprised of, but not limited to, a frame or body with front and/or rear suspension components (such as arms, springs, axles, spindles, and shafts) installed and powertrain components (including either an electric motor or a gas-powered internal combustion engine) installed or ready for installation.
>
> When imported together with a rolling chassis subject to these orders, other LSPTV components, such as batteries, bumpers, wheel and tire assemblies,

> cowlings, fenders, grills, kick plates, steering column and steering wheel assemblies, dash assembly, seat assemblies, pedal assemblies, brake assemblies, canopy or roof assemblies, temporary rain enclosures, windshields, mirrors, headlights, taillights, lighting systems, or storage—whether assembled or unassembled, whether as part of a kit or not, and whether or not accompanied by additional components—constitute part of an unfinished and/or unassembled LSPTV that is subject to these orders. The inclusion of other products, components, or assemblies not described here does not remove the product from the scope….
>
> LSPTVs and subassemblies subject to these orders include those that are produced in the subject country whether assembled with other components in the subject country or in a third country. Processing or completion of finished and unfinished LSPTVs and subassemblies either in the subject country or in a third country does not remove the product from the scope.

*AD/CVD Orders*, 90 Fed. Reg. at 38,763.

23. Accordingly, a subject good must contain at least a Chinese-origin "subassembly, also known as a 'rolling chassis,' which is typically comprised of, but not limited to, a frame … with front and/or rear suspension components … installed and powertrain components … installed or ready for installation." *AD/CVD Orders*, 90 Fed. Reg. at 38,763.

24. The Orders do not cover Atlas Carts' merchandise.[1] Critically, Atlas Carts' merchandise does not contain Chinese-origin rolling chassis. The shipment that Atlas Carts understands are subject to CBP's EAPA inquiry relate to shipments of (a) Chinese-origin cart frames – frames that lack any of the componentry necessary to be considered a subject "rolling chassis" subassembly, or (b) disassembled carts that are manufactured in Vietnam. For these Vietnamese-origin carts, the "rolling chassis" is manufactured in Vietnam. The frames and other metal structural items making up the merchandise were produced entirely in Vietnam. Other

[1] Atlas Carts had a small number of shipments that were subject to the scope of the AD/CVD orders that entered the United States shortly after the first imposition of cash deposits following the affirmative preliminary countervailing duty determination. Atlas Carts does not contest whether those shipments are within the scope of the AD/CVD Orders.

components are sourced domestically in Vietnam, or imported, but in any case the fabrication of the frame and complex assembly operations in Vietnam render the carts Vietnamese origin.

25. Atlas Carts' merchandise therefore does not "at a minimum" contain a Chinese-origin rolling chassis, as the *AD/CVD Orders* require to be within the scope of the Orders.

26. Since the imposition of duties during the underlying antidumping and countervailing duty investigations conducted prior to the issuance of the Orders, Atlas Carts has consistently and transparently worked with CBP to demonstrate compliance with the requirements of the Orders. In February 2025, not long after liquidation of entries was first suspended, CBP notified Atlas Carts that six of its entries were considered within the scope of the AD/CVD investigations. Atlas Carts reviewed its entries and the scope description of the recently-published preliminary AD and CVD determinations, and ultimately reclassified the entries as within the scope of the investigations. Atlas Carts revised its entry documentation for those six entries, changing the classification of the subject merchandise from type 01 (consumption entry) to type 03 (AD/CVD entry). In its EAPA investigation initiation notice, which Atlas will detail at greater length in its forthcoming motion for temporary restraining order and preliminary injunction, CBP identified these shipments as contributing to the "reasonable suspicion" of evasion.

27. Separately, in June 2026, CBP issued a CF-28 request for information covering five entries of Atlas Carts' merchandise. Atlas Carts provided a complete response to this request on August 6, 2026, demonstrating that its imports were not subject to the scope of the AD/CVD Orders.

28. Notwithstanding this submission, only 12 days later CBP notified Atlas Carts by email that CBP had initiated an EAPA investigation and imposed interim measures (*See*

**Attachment 1**). Subsequently, in its August 25, 2026, initiation notice, CBP pointed to materials in the CF-28 response as supporting its "reasonable suspicion" determination to support its application of interim measures (*See* **Attachment 2**). That is, without further follow up, and with only a handful of days to review Atlas Carts' lengthy submission did CBP determine to that the materials indicated possible evasion.

29. In its initiation notice, CBP indicated that it will impose interim measures as follows:

- suspend the liquidation of each unliquidated entry of such covered merchandise that entered on or after May 20, 2026, the date of the initiation of the investigation;
- pursuant to the Commissioner's authority under 19 U.S.C. § 1504(b), extend the period for liquidating each unliquidated entry of such covered merchandise that entered before May 20, 2026, the date of the initiation of the investigations; and,
- pursuant to the Commissioner's authority under 19 U.S.C. § 1623, take such additional measures as the Commissioner determines necessary to protect the revenue of the United States, including requiring a single transaction bond or additional security or the posting of a cash deposit with respect to such covered merchandise.

*See* **Attachment 2** at 24.

30. The applicable cash deposit rates are the "China-Wide Entity" AD rate of 478.09 percent and the "All Others" CVD rate of 41.14 percent (for a combined cash deposit rate of 519.23 percent). *See Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order; Amended Final Determination of Countervailing Duty Investigation and Countervailing Duty Order*, 90 Fed. Reg. 38,759 (Aug. 12, 2025).

31. The interim measures would effectively require Atlas Carts to immediately pay CBP millions of dollars on prior imports filed during the period identified.

32. These measures were imposed *before* Atlas Carts had knowledge of the basis for CBP's suspicion of evasion or the basis for the EAPA allegation that prompted CBP's

determination. Atlas Carts received no notice from CBP that an EAPA allegation had been received by CBP, that CBP had commenced an EAPA investigation, or that CBP was contemplating imposing interim measures. CBP issued the CF-28s at issue without any indication that it had received an EAPA allegation, that an EAPA investigation was underway, or that CBP was contemplating imposing interim measures covering many entries.

33. Currently, Atlas Carts has shipments already en route to the United States. Should these interim measures remain in effect, Atlas Carts will be forced to (a) turn these shipments around, incurring substantial, unrecoverable re-export costs, (b) re-route the shipments to a bonded warehouse as a temporary step, or (c) incur millions of dollars in AD/CVD duties, all for merchandise that is not subject to the Orders. Had Atlas Carts been informed that CBP had received an EAPA allegation, that an EAPA investigation was underway, or that CBP was contemplating imposing interim measures, it could have taken some steps to avoid these unmanageable circumstances and/or demonstrate that there was no basis for a "reasonable suspicion" of evasion.

34. Atlas Carts was not afforded a meaningful opportunity to respond before CBP imposed interim measures. CBP issued its notice of initiation on August 25, 2026, and cites no actual evidence of evasion – the shipments that it identified all pertain to either merchandise that Atlas Carts readily reclassified well over a year and a half ago, and shipments that Atlas Carts has demonstrated are not subject to the scope of the AD/CVD Orders. The notice of initiation does not state that CBP informed Atlas Carts of any EAPA allegation, that CBP had informed Atlas Carts that it had initiated an EAPA investigation, or that CBP had informed Atlas Carts it was contemplating imposing interim measures.

35. The interim measures that Customs imposed will, if not enjoined by this Court, imminently force Atlas Carts to cease operations and essentially bankrupt the company. Atlas Carts is an emerging business with limited resources and financing, and depends on the funds it has to secure inventory and make sales. If these interim measures are not enjoined immediately and it cannot import additional inventory, Atlas Carts anticipates its existing inventory of golf carts to be depleted within days. Stripped of essential inventory and crucial assets, Atlas Carts will be forced to cease operations and furlough its employees. Atlas Carts is incapable of offsetting the continuing cost of the interim measures by cutting expenses, passing costs on to dealers or customers, or moving production elsewhere. The interim measures have already caused, and will continue to cause, Atlas Carts to lose goodwill, business opportunities, reputation, and sales, losses which cannot be recovered from the government.

## COUNT I

### CBP Violated Atlas Carts' Fifth Amendment Right to Due Process by Failing to Provide Atlas Carts Notice and a Meaningful Opportunity to be Heard

36. Atlas Carts incorporates paragraphs 1 through 35 by reference.

37. The due-process clause of the Fifth Amendment requires that CBP provide an importer "a meaningful opportunity" to be heard before, not after, CBP imposes interim measures. *Superior Com. Sols.*, 811 F. Supp. 3d at 1376–77.

38. Accordingly, this Court adopted the *Mathews* due-process balancing test, which considers the private interest at stake, the risk of erroneous deprivation, and the public interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

39. "{T}he private interest that will be affected by" interim measures is great—although unlawfully imposed monetary exactions can be refunded, Atlas Carts has no practical ability "to ameliorate the interim loss." *Mathews*, 424 U.S. at 341.

40. The risk of erroneous deprivation through the imposition of interim measures in EAPA investigations is high—CBP applies a reasonable-suspicion standard based on allegations submitted by interested parties like competitors, rather than a preponderance-of-the-evidence standard based on "unbiased" reports from disinterested parties. *Mathews*, 424 U.S. at 344.

41. The public interest is not impaired by affording importers a mere meaningful opportunity to respond before interim measures are imposed, as opposed to a full-blown evidentiary hearing—it costs the government little to afford importers time to make a documentary submission in response to an EAPA allegation that CBP has already been aware of for months. *Cf. Mathews*, 424 U.S. at 347–48.

42. CBP did not provide Atlas Carts notice and a meaningful opportunity to respond before imposing interim measures because it never apprised Atlas Carts of the pendency of an EAPA investigation, the existence of an EAPA allegation, or the possibility that CBP would impose interim measures.

43. Because CBP failed to provide Atlas Carts notice and a meaningful opportunity to respond before imposing interim measures, CBP violated Atlas Carts' Fifth Amendment right to due process, and the interim measures were unlawfully imposed.

**COUNT II**

**The Reasonable-Suspicion Standard, As Applied Here, Violates the Fifth Amendment**

44. Atlas Carts incorporates paragraphs 1 through 43 by reference.

45. Based only on "reasonable suspicion" of evasion, CBP imposed interim measures pursuant to 19 U.S.C. § 1517(e)(3) that could require Atlas Carts to immediately pay Customs millions of dollars.

46. The reasonable-suspicion standard, as applied in this case, violated Atlas Carts' Fifth Amendment right to due process by permitting CBP to deprive Atlas Carts of significant

property interests through an evidentiary standard with a high risk of erroneous deprivation. *Mathews*, 424 U.S. at 335-48.

47. Because CBP's application of the reasonable-suspicion standard in this case violated the Fifth Amendment, the interim measures were unlawfully imposed.

**COUNT III**

**CBP's Initiation Violated 19 U.S.C. § 1517(e) Because there in Insufficient Evidence to Support a "Reasonable Suspicion" of Evasion**

48. Atlas Carts incorporates paragraphs 1 through 47 by reference.

49. CBP must at least have "reasonable suspicion" of evasion to impose interim measures. 19 U.S.C. § 1517(e). CBP's suspicion of evasion on the part of Atlas Carts was not reasonable.

50. CBP's suspicion of evasion was based on outdated information concerning materially different imports (a handful of imports that Atlas Carts agreed were subject to the scope of the Orders and reclassified) or information that, if anything, should have dispelled any suspicion (*i.e.*, substantial CF-28 responses demonstrating that Atlas Carts' shipments are not subject to the scope of the Orders).

51. Because CBP lacked reasonable suspicion of evasion, the interim measures were unlawfully imposed.

## PRAYER FOR RELIEF

Atlas Carts respectfully requests that this Court:

(a) Declare that CBP unlawfully imposed the interim measures;

(b) Enjoin the interim measures;

(d) Grant Atlas Carts such further relief as this Court deems appropriate.

Respectfully submitted,

/s/ Henry D. Almond
Henry D. Almond
David J. Park
Lynn Fischer Fox
Kang Woo Lee
Archana Rao P. Vasa
Sally Alghazali
Jennifer "Ellie" Farrin

*Counsel to Vexas Corporation d/b/a Atlas*

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 942-5000
Fax: (202) 942-5999
E-mail: Henry.Almond@arnoldporter.com

**Dated: August 28, 2026**