**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **VEXAS CORP. d/b/a ATLAS**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES; U.S. CUSTOMS AND BORDER PROTECTION; and ERIC CHOY, in his official capacity as Executive Director, Trade Remedy Law Enforcement Directorate, Office of Trade, U.S. Customs and Border Protection,**<br><br>**Defendants.** | **Court No: 26-03809**<br><br>**PUBLIC VERSION**<br>**Confidential information redacted from the exhibits.** |

# PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER <u>AND PRELIMINARY INJUNCTION</u>


Henry D. Almond
David J. Park
Lynn Fischer Fox
Kang Woo Lee
Archana Rao P. Vasa
Sally Alghazali
Jennifer "Ellie" Farrin

*Counsel to Vexas Corporation d/b/a Atlas*

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 942-5000
Fax: (202) 942-5999
E-mail: Henry.Almond@arnoldporter.com


**Dated: August 31, 2026**

## TABLE OF CONTENTS

Page


BACKGROUND ....................................................................................................2

I. Atlas Carts' Electric Golf Carts are Manufactured in Vietnam using Vietnamese Frames and Other Significant Vietnamese Inputs ....................................................2

II. CBP Imposes Interim Measures Amounting to Sanctions Without Notice or Opportunity to be Heard ....................................................................................4

SUMMARY OF ARGUMENT....................................................................................9

ARGUMENT ....................................................................................................10

I. Standard of Review ....................................................................................10

II. Atlas Carts is Likely to Succeed on the Merits Because CBP Did Not Provide Pre-Deprivation Notice or a Meaningful Opportunity to be Heard, in Violation of the Fifth Amendment ....................................................................................10

III. This Court has Jurisdiction to Remedy CBP's Unconstitutionally Imposed Interim Measures ....................................................................................14

IV. Atlas Carts Will be Irreparably Harmed Absent Injunctive Relief ....................................18

V. The Balance of the Equities and Public Interest Favor Atlas Carts....................................20

CONCLUSION ....................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) ........................................................................................................ 15

*Air Brake Systems, Inc. v. Mineta*,
357 F.3d 632 (6th Cir. 2004) ......................................................................................... 17

*Am. Signature, Inc. v. United States*,
598 F.3d 816 (Fed. Cir. 2010)......................................................................................... 21

*Bennet v. Spear*,
520 U.S. 154 (1997) ........................................................................................................ 16

*Brock v. Roadway Exp., Inc.*,
481 U.S. 252 (1987) ........................................................................................................ 13

*Butz v. Economou*,
438 U.S. 478 (1978) ........................................................................................................ 14

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
664 F.3d 922 (Fed. Cir. 2012)......................................................................................... 19

*Chilean Nitrate Corp. v. United States*,
11 C.I.T. 538 (1987) ........................................................................................................ 19

*Ciba-Geigy Corp. v. EPA*,
801 F.2d 430 (D.C. Cir. 1986) ........................................................................................ 17

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) ........................................................................................................ 11

*Ford Motor Co. v. United States*,
44 F. Supp. 3d 1330 (Ct. Int'l Trade 2015)..................................................................... 12

*Hylsa v. United States*,
22 C.I.T. 44 (1998) .......................................................................................................... 14

*ICON EV LLC v. United States*,
Court No. 26-02759, Slip Op. 26-42 (Ct. Int'l Trade Apr. 24, 2026) ) ............................*passim*

*ICON EV LLC v. United States*,
Court No. 26-02759, Slip Op. 26-55 (Ct. Int'l Trade May 26, 2026) ...........................9, 13, 17

*Invenergy Renewables LLC v. United States*,
422 F. Supp. 3d 1255 (Ct. Int'l Trade 2019) ........ 20

*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ........ 21

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ........ 12-13

*Memphis Light, Gas & Water Div. v. Craft*,
436 U.S. 1 (1978) ........ 12

*NEC Corp. v. United States*,
151 F.3d 1361 (Fed. Cir. 1998) ........ 15

*Ninestar Corp. v. United States*,
666 F. Supp. 3d 1351 (Ct. Int'l Trade 2023) ........ 14

*Nken v. Holder*,
556 U.S. 418 (2009) ........ 10

*Phoenix Metal Co. v. United States*,
2024 WL 2891503 (Ct. Int'l Trade June 10, 2024) ........ 12

*PSC VSMPO-Avisma Corp. v. United States*,
688 F.3d 751 (Fed. Cir. 2012) ........ 11

*Queen's Flowers de Colombia v. United States*,
947 F. Supp. 503 (Ct. Int'l Trade 1996) ........ 19

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011) ........ 19

*Royal Brush Mfg., Inc. v. United States*,
75 F. 4th 1250 (Fed. Cir. 2023) ........ 10

*Scripps-Howard Radio, Inc. v. FCC*,
316 U.S. 4 (1942) ........ 15

*Shree Rama Enters. v. United States*,
983 F. Supp. 192 (Ct. Int'l Trade 1997) ........ 19

*Superior Comm. Sols., LLC v. United States*,
811 F. Supp. 3d 1363 (Ct. Int'l Trade 2025) ........ 11

*Sys. Application & Techs., Inc. v. United States*,
691 F.3d 1374 (Fed. Cir. 2012) ........ 16

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
578 U.S. 590 (2016) .......... 16

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 10

*Zenith Radio Corp. v. United States*,
710 F.2d 806 (Fed. Cir. 1983) .......... 20

**Statutes**

19 U.S.C. § 1517 .......... 14

19 U.S.C. § 1517(e) .......... 14

19 U.S.C. § 1517(g)(3) .......... 15

28 U.S.C. § 1581 .......... 14

28 U.S.C. § 1581(c) .......... 14, 15

28 U.S.C. § 1581(i) .......... 9, 14-15

28 U.S.C. § 1581(i)(1)(D) .......... 15

28 U.S.C. § 2640(e) .......... 15

5 U.S.C. § 704 .......... 15

**Regulations**

19 C.F.R. § 165.15(d)(1) .......... 11

19 C.F.R. § 165.27(c) .......... 17

**Other Authorities**

*Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order; Amended Final Determination of Countervailing Duty Investigation and Countervailing Duty Order*,
90 Fed. Reg. 38,759 (Dep't Com. Aug. 12, 2025) .......... 3

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| VEXAS CORP. d/b/a ATLAS<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES; U.S. CUSTOMS AND BORDER PROTECTION; and ERIC CHOY, in his official capacity as Executive Director, Trade Remedy Law Enforcement Directorate, Office of Trade, U.S. Customs and Border Protection,<br><br>Defendants. | Court No: 26-03809 |

**PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Just a few months ago, this Court halted U.S. Customs and Border Protection's ("CBP") interim measures against an importer of electric golf carts, because, among other factors, the importer faced imminent extinction and the government interest was "low." *ICON EV LLC v. United States*, Court No. 26-02759, Slip Op. 26-42 (Ct. Int'l Trade Apr. 24, 2026). Under essentially the same set of circumstances, and without any notice or meaningful opportunity to be heard, CBP again imposed so-called "interim measures" under the Enforce and Protect Act (EAPA) on a U.S.-based importer, plaintiff Vexas Corp. d/b/a Atlas ("Atlas" or "Atlas Carts"), amounting to sanctions that will quickly render Atlas Carts insolvent. CBP did so despite this Court already holding that importers are entitled to notice and an opportunity to be heard before interim measures are imposed.

For the Court to enjoin these interim measures, Atlas Carts need only demonstrate that it is more likely than not to succeed. As discussed below, Atlas Carts is likely to succeed as to the

merits, jurisdiction, and irreparable harm: CBP's interim measures were imposed without due process and will imminently put Atlas Carts out of business, engendering a final agency action reviewable now under the Court's residual jurisdiction. Moreover, the balance of the equities and public interest favor abiding by the Constitution and the Court's decisions, rather than permitting CBP to violate them. The Court should therefore grant Atlas Carts a temporary restraining order and preliminary injunction enjoining enforcement of the interim measures (except to the extent that they merely extend or suspend liquidation) during the pendency of CBP's EAPA investigation.

## SUBMISSION OF PUBLIC VERSION AND FORTHCOMING CONFIDENTIAL SUPPORTING MATERIALS

Undersigned counsel is today filing this public version of its motion for temporary restraining order and preliminary injunction, along with supporting public documents and exhibits. Counsel intends to seek an appropriate protective order in this action such that plaintiff can submit confidential financial and business records under seal in support of this motion. The enclosed public version filed today is complete, but with confidential information and exhibits redacted.

## BACKGROUND

### I. Atlas Carts' Electric Golf Carts are Manufactured in Vietnam using Vietnamese Frames and Other Significant Vietnamese Inputs

Atlas Carts is a U.S.-based importer of record that imports certain proprietary models of electric golf carts (the "merchandise"). **Exhibit 1**, Declaration of Sanjay Kopay and Mark Messick (Kopay & Messick Decl.) ¶ 2. Atlas Carts has been in business since 2022 and employs nearly 50 personnel located primarily at its assembly plant in Williston, South

Carolina. *Id.* ¶ 4. The company maintains relationships with dealers nationwide who Atlas Carts' merchandise for sale to U.S. consumers. *Id.* ¶ 3.

In August 2025, the U.S. Department of Commerce issued an antidumping and countervailing duty order on low-speed personal transportation vehicles ("LSPTVs") from the People's Republic of China. *Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order; Amended Final Determination of Countervailing Duty Investigation and Countervailing Duty Order*, 90 Fed. Reg. 38,759 (Dep't Com. Aug. 12, 2025) ("the Orders"). The Orders cover finished LSPTVs of Chinese origin, as well as certain unfinished or unassembled LSPTVs of Chinese origin. The scope of these Orders is defined as:

> An unfinished and/or unassembled LSPTV subject to these orders covers at a minimum a subassembly, also known as a "rolling chassis," which is typically comprised of, but not limited to, a frame or body with front and/or rear suspension components (such as arms, springs, axles, spindles, and shafts) installed and powertrain components (including either an electric motor or a gas-powered internal combustion engine) installed or ready for installation.
>
> When imported together with a rolling chassis subject to these orders, other LSPTV components, such as batteries, bumpers, wheel and tire assemblies, cowlings, fenders, grills, kick plates, steering column and steering wheel assemblies, dash assembly, seat assemblies, pedal assemblies, brake assemblies, canopy or roof assemblies, temporary rain enclosures, windshields, mirrors, headlights, taillights, lighting systems, or storage—whether assembled or unassembled, whether as part of a kit or not, and whether or not accompanied by additional components—constitute part of an unfinished and/or unassembled LSPTV that is subject to these orders. The inclusion of other products, components, or assemblies not described here does not remove the product from the scope….
>
> LSPTVs and subassemblies subject to these orders include those that are produced in the subject country whether assembled with other components in the subject country or in a third country. Processing or completion of finished and unfinished LSPTVs and subassemblies either in the subject country or in a third country does not remove the product from the scope.

Orders, 90 Fed. Reg. at 38,763. Subject merchandise must therefore contain *at least* a Chinese-origin "subassembly, also known as a 'rolling chassis,' which is typically comprised of, but not limited to, a frame … with front and/or rear suspension components … installed and powertrain components … installed or ready for installation." *Id.*

The Orders do not cover Atlas Carts' merchandise. Atlas Carts' merchandise does not contain Chinese-origin rolling chassis. Kopay & Messick Decl. ¶ 7. The rolling chassis in Atlas Carts' merchandise are of Vietnamese origin. *Id.* The frames in Atlas Carts' merchandise and major metal structural components were produced in Vietnam. *Id.*

## II. CBP Imposes Interim Measures Amounting to Sanctions Without Notice or Opportunity to be Heard

On August 18, 2026, however, CBP notified Atlas Carts that, "{b}ased on a review of available information, {CBP} has determined that there is reasonable suspicion of evasion of antidumping (AD) and countervailing (CVD) duties by Atlas Carts," among other importers. In the same communication on August 18, 2026, CBP also notified Atlas Carts that CBP "shall implement the following interim measures":

- Extend liquidation of unliquidated entries that entered before the date of initiation of the investigation (May 20, 2026);
- Suspend liquidation of unliquidated entries entered on or after the date of initiation of the investigation, May 20, 2026, and reject any entry summaries and require a re-file for those entries that are within the entry summary reject period;
- Require "live" entry for all imports of LSPTV from China and Vietnam by the Importers, requiring the Importers to submit proper documentation and all duties prior to release of the merchandise;

- The AD/CVD rates are the "all others" rate (*i.e.*, a combined AD/CVD cash-deposit rate of 519.23 percent *ad valorem*) on LSPTV and parts, if the U.S. Department of Commerce has not determined a separate rate that would apply to that entry.

**Exhibit 2**, Email from CBP.

Atlas Carts had no prior knowledge of the basis for CBP's suspicion of evasion or of the basis for the EAPA allegation that prompted CBP's determination. Kopay & Messick Decl. ¶¶ 10–12. Atlas Carts received no notice that an EAPA allegation had been received by CBP, that CBP had commenced an EAPA investigation, or that CBP was contemplating imposing interim measures. *Id.* ¶ 12. Nor was Atlas Carts afforded a meaningful opportunity to respond before CBP imposed interim measures. *Id.*

CBP did issue CF-28s, a formal request for information, as to a handful of Atlas Carts' entries of merchandise, which Atlas Carts responded to just two weeks prior to CBP's August 18, 2026 communication notifying Atlas Carts of the EAPA investigation. But the CF-28 was specific to a limited set of entries, and did not reference any EAPA allegation, EAPA investigation, or contemplated interim measures. *Id.* ¶¶ 9–10. CBP's Initiation Notice provided after-the-fact notice of initiation of an EAPA investigation and ignores all information provided to CBP by Atlas Carts in its response to the CF-28, paraphrases the scope of the Orders to such an extent that it would cover any and all imports of carts and parts of carts in any condition, and equates compliance efforts and lawful tariff engineering with evasion. *See* **Exhibit 3**, Notice of Initiation, EAPA Investigation 8247 ("CBP's Initiation Notice").

Similarly, CBP relied on (a) information that demonstrated that Atlas was, in fact, not evading the orders and (b) stale, incomplete information as a basis for its "reasonable

suspicion" of evasion. Specifically, as to category (a), CBP relied in part on the entries targeted in the aforementioned CF-28s as the basis for "reasonable suspicion." *See* CBP's Initiation Notice at 22-23. But Atlas Carts had only just provided a response to the CF-28s a mere two weeks earlier. Therein, Atlas Carts detailed its Vietnam production sufficient to show that the entries at issue were not subject to the Orders, including establishing that the carts were built in Vietnam with a Vietnam-origin rolling chassis and other key materials. As to merchandise actually from China and shipped from China, Atlas demonstrated that the imported items were not subject "rolling chassis." At **Exhibit 4** we provide a copy of the narrative response addressing these CF28 requests along with one representative CF28 form requesting the information. Consistent with CBP's indication in the CF28, we have treated this exhibit as confidential.

Regarding category (b), CBP also relied on seven entries from late 2024 and early 2025 as the basis for its "reasonable suspicion" of evasion. CBP communicated a concern to Atlas Carts that these seven entries were subject to the AD/CVD investigation. *See* CBP's Initiation Notice at 22-23. Atlas Carts engaged in good faith with CBP in discussing these entries, and concluded that six of those entries were within the scope of the AD/CVD investigation. Accordingly, Atlas reclassified those entries in April and May 2025 from "Type 01" to "Type 03," reflecting that the entries were subject to the Orders. At **Exhibit 5** we provide copies of the amended CBP 7501 forms confirming that the entries were reclassified as AD/CVD entries.

With respect to the seventh entry at issue, in mid-2025 CBP communicated to Atlas that it viewed this entry as within the scope of the Orders. However, the entry related to a shipment of non-subject batteries and other components, and thus was not in scope for the

purposes of the AD/CVD investigation. Atlas Carts communicated this to CBP, and CBP indicated that it would accept Atlas Carts' explanation for this entry. Atlas Carts received no further communication from CBP on this entry, and believed that the issue was resolved. Without informing Atlas, CBP in its initiation notice indicated that it "examined" these seven entries in December 2025, several months after Atlas Carts reclassified the six entries and well after Atlas explained the seventh entry to CBP. At **Exhibit 6** we provide correspondence with CBP and the underlying documents demonstrating that the imports associated with this seventh entry were not within the scope of the AD/CVD orders.

CBP's Initiation Notice does not consider these facts, *see* **Exhibit 3**, which Atlas Carts would have presented if given an opportunity to be heard prior to the implementation of the interim measures. Indeed, it is remarkable and illogical that CBP could consider entries which Atlas had engaged with CBP officials months prior to constitute evidence that could support a reasonable suspicion of evasion. Nor does CBP consider this Court's very recent ruling in *ICON* (involving essentially the same set of facts) that such interim measures could constitute deprivation of property without due process. *ICON EV*, Slip Op. 26-42 at *11-14. The evidence that CBP *already has in its possession* suggests that the entries of carts upon which the interim measures were imposed are not within the Orders' scope. Neglecting to consider that evidence cannot create "reasonable" suspicion of evasion sufficient to impose business-ending interim measures.

The interim measures that CBP imposed will, if not enjoined by this Court, irreparably harm Atlas Carts. At bottom, the interim measures will put Atlas Carts out of business by mid-September 2026. CBP's interim measures suggest that CBP will impose the 519.23 percent combined AD/CVD cash deposits on prior entries back to May 20, 2026. This will cost the

company millions in duty payments, essentially wiping out all of the company's cash and assets. Kopay & Messick Declaration at ¶ 14. The specifics regarding Atlas' financial position are detailed in the confidential exhibits accompanying this motion, but suffice to say that Atlas Carts does not have the ability to pay this amount or obtain any financing to help it pay. *Id.* ¶¶ 20–26.

Of course, Atlas could have taken no steps to avoid this significant liability, given that CBP is imposing these duties retroactively and gave no notice to Atlas of the initiation of the investigation. These back payments also say nothing as to the harm on the company on a going-forward basis. Atlas currently has shipments on the water arriving soon. Paying duties on these upcoming shipments imposes yet another unaffordable financial burden. Kopay & Messick Declaration at ¶ 14. In essence, the company will be forced to cease incoming shipments, and therefore cease production and lay off production workers with in a matter of days or a few weeks.

Atlas Carts' imminent closure, while obviously detrimental to its employees and customers, would also harm its dealers and suppliers. Indeed, declarations from dealers that are representative of the many dealers that sell Atlas Carts' golf carts confirm that Atlas Carts' suppliers, businesses, employees, and customers will all be harmed by the interim measures. **Exhibit 7**, Declaration of Kyle Regas (Regas Decl.) ¶¶ 6–8 ("Atlas Carts are the heartbeat of our business and our surrounding community. If these attacks continue to undermine Atlas's operations, the strong relationships we have built locally will perish."). *See also* **Exhibit 8**, Declaration of Joseph Tribull (detailing the potential harm to Atlas dealer Beach Buggies LLC). Atlas Carts has no practical ability to mitigate these irreparable harms. It cannot cut costs and reduce the quality of its carts. Kopay & Messick Decl. ¶ 21. It cannot somehow cut all of its expenses. *Id.* Even if it could, it would *still* have a serious budget shortfall necessitating its

imminent closure. *Id.* It also cannot raise its prices to accommodate a 519.23 percent expense. *Id.* ¶ 20. And it cannot source or manufacture substantial components or carts in the United States without any ability to obtain financing. *Id.* ¶ 25.

## SUMMARY OF ARGUMENT

The Court should grant Atlas Carts' motion and enjoin the interim measures. First, Atlas Carts is likely to succeed on its claim that CBP violated its Fifth Amendment right to due process when it imposed interim measures without providing Atlas Carts notice or a meaningful opportunity to be heard. This Court has already held that this could constitute a due process violation in a case involving *essentially the same set of facts*. *ICON EV*, Slip Op. 26-42 at *11-14. And even if it had not, Supreme Court precedent makes clear that CBP's refusal to provide Atlas Carts pre-deprivation process was unlawful.

Atlas Carts is also likely to establish this Court's jurisdiction to remedy CBP's unconstitutional actions now. This Court has already found that it has jurisdiction under Section 1581(i) over such claims. *ICON EV LLC v. United States*, Court No. 26-02759, Slip Op. 26-55 (Ct. Int'l Trade May 26, 2026) ("The court has (i) jurisdiction over ICON's claims relating to interim measures because a remedy under (c) jurisdiction would be manifestly inadequate"). Indeed, as this Court noted in *ICON*, unless this Court exercises its jurisdiction, CBP would have free reign to unconstitutionally bankrupt importers through interim measures—imposing whatever duties it likes—effectively insulating its final evasion determinations from judicial review. *Id*. at *11–12 ("{CBP} imposed interim measures without due process that will bankrupt it before it can even receive a final determination from Customs or appeal that determination if it is adverse").

The remaining injunctive-relief factors favor Atlas Carts. Atlas Carts will be irreparably harmed by CBP's unlawful interim measures absent immediate relief. Due to the interim

measures, Atlas Carts will go out of business by the end of September 2026—even if all the money that CBP is now demanding were refunded at the end of the EAPA investigation. And the balance of the equities and the public interest—which merge where the government is the defendant—also favor Atlas Carts. Constitutional violations are never in the public interest. Nor does affording an importer the bare-minimum process due while an EAPA investigation unfolds impair CBP's ability to investigate and remedy duty evasion. If anything, it enhances CBP's decision-making process.

The Court should grant Atlas Carts' motion and enjoin the interim measures.

## ARGUMENT

### I. Standard of Review

The Court considers four factors in deciding whether to grant a temporary restraining order or preliminary injunction: (1) whether the movant "is likely to succeed on the merits," (2) whether the movant is "likely to suffer irreparable harm in the absence of preliminary relief," (3) whether the "balance of equities tips in {the movant's} favor," and (4) whether "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The last two factors merge where, as here, the government "is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

### II. Atlas Carts is Likely to Succeed on the Merits Because CBP Did Not Provide Pre-Deprivation Notice or a Meaningful Opportunity to be Heard, in Violation of the Fifth Amendment

CBP's decision to impose bankrupting interim measures—without notice or opportunity to respond to the allegation that prompted those measures—violated Atlas' right to due process. The due process clause of the Fifth Amendment to the U.S. Constitution governs CBP's conduct in EAPA investigations. *Royal Brush Mfg., Inc. v. United States*, 75 F. 4th 1250, 1259 (Fed. Cir. 2023). Atlas Carts' constitutional right to due process entitles it "to notice and a meaningful

opportunity to be heard" before, not after, a deprivation occurs. *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761–66 (Fed. Cir. 2012); *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("some form of pretermination hearing" is generally required).

This Court has already held, based on Supreme Court and Federal Circuit precedent, that CBP's conduct in this case violates the Fifth Amendment. In *Superior Commercial Solutions, LLC v. United States*, CBP imposed interim measures subjecting unliquidated entries to a combined AD/CVD cash deposit rate of 371.46% *ad valorem*. 811 F. Supp. 3d 1363, 1376 (Ct. Int'l Trade 2025). But CBP failed to provide the plaintiff "an opportunity to offer evidence and make administrative arguments prior to the imposition" of these interim measures, as it provided notice of the EAPA investigation at the same time as it imposed them. *Id.* (The Court reached that conclusion despite the government's argument that CBP had previously issued a CF-28 to the plaintiff in response to which the plaintiff allegedly failed to "provide numerous types of information." *Superior Commercial Sols., LLC v. United States*, Court No. 24-00052, ECF No. 26 at 28 (Ct. Int'l Trade Nov. 15, 2024).) The Court then held that CBP's conduct, as well as 19 C.F.R. § 165.15(d)(1) itself, violates Fifth Amendment due process, because "a meaningful opportunity to respond should happen *before* a temporary deprivation takes effect, not afterwards." 811 F. Supp. 3d at 1376–77 (emphasis added).

This case is virtually identical to *Superior Commercial Solutions*: there, as here, CBP provided no notice or opportunity to be heard before imposing steep AD/CVD cash-deposit rates and live entry requirements that will put Atlas Carts out of business within a month. That is just as much a due process violation as it was in *Superior Commercial Solutions*, if not more so given the combined 519.23 percent *ad valorem* cash-deposit rate.

The result follows directly from settled due process principles. The Supreme Court's seminal decision in *Mathews v. Eldridge* sets forth the test for determining what process is due under the Fifth Amendment, considering the private interest at stake, the risk of erroneous deprivation, and the public interest. 424 U.S. 319, 335 (1976). Each factor supports a requirement that Customs afford importers like Atlas Carts notice and an opportunity to be heard *before* interim measures are imposed.

The private interest favors Atlas; and, indeed, this Court already found as much in *ICON*, a case involving substantially the same set of facts. *ICON EV*, Slip Op. 26-42 at *11-14. Specifically, prohibitive live entry requirements can result in a substantial burden for importers. "The combination of cash deposits for AD/CVD duties with the live entry requirement requires the importer to suddenly deposit a large amount of cash with Customs before it can even complete the sale for which it is importing the goods." *Phoenix Metal Co. v. United States*, 2024 WL 2891503, at *9 (Ct. Int'l Trade June 10, 2024). "Live entries are so onerous that they have previously been compared to sanctions." *Id.* (citing *Ford Motor Co. v. United States*, 44 F. Supp. 3d 1330, 1339 n.16 (Ct. Int'l Trade 2015)). And, although unlawfully imposed monetary exactions can be refunded, Atlas Carts has no practical ability "to ameliorate the interim loss." *Mathews*, 424 U.S. at 341. Once Atlas Carts goes out of business, a refund a year or more later is no remedy at all—the damage is already done. In other words, even if these measures may ultimately be lifted, their imposition "for any appreciable time works a uniquely final deprivation." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 20 (1978).

Next, consider the high risk of erroneous deprivation through the imposition of interim measures in EAPA investigations. CBP applies a "reasonable-suspicion" standard based on allegations submitted by interested parties like competitors, rather than a preponderance-of-the-

evidence standard based on "unbiased" reports from disinterested parties. *Mathews*, 424 U.S. at 344. That naturally lends itself to erroneously imposed interim measures. CBP's determination to impose these severe interim measures was based on its "reasonable suspicion" that Atlas Carts, according to an allegation submitted by one of its competitors, had transshipped or misclassified its merchandise. Atlas Carts' merchandise from Vietnam does not contain any Chinese rolling chassis; its shipments from China are of parts that are demonstrably not rolling chassis or carts. Had Atlas Carts been afforded the process that this Court had already held it is constitutionally entitled to, it could have demonstrated to CBP that its merchandise is not subject to the Orders, and CBP could have declined to impose these severe interim measures in the first place. Thus, without "some kind of a hearing ensuring an effective initial check against mistaken decisions," CBP's conduct violates the Fifth Amendment. *Brock v. Roadway Exp., Inc.*, 481 U.S. 252, 261 (1987) (quotation omitted).

Finally, the public interest would not be impaired by affording importers like Atlas Carts mere notice and a meaningful opportunity to be heard before interim measures are imposed. *Cf. Mathews*, 424 U.S. at 347–48. A full-blown evidentiary hearing on the record is not necessarily required. But by the time CBP imposed interim measures, it had already been sitting on an EAPA allegation for months. In this case, the allegation was filed on April 20, 2026, and CBP initiated its investigation on May 20, 2026. It should not cost the government much, if anything, to afford importers time to make a documentary submission directly in response to an allegation of evasion before CBP decides whether to impose interim measures. If anything, providing importers notice and an opportunity to respond before interim measures are imposed would "tend to enhance the reliability of information and the impartiality of the decision-making process,"

leading to "a less pressing need for individual suits to correct constitutional error." *Butz v. Economou*, 438 U.S. 478, 512 (1978).

Accordingly, both because this Court has already said so, and because Supreme Court precedent leads to the same result, Atlas is likely to succeed on the merits of its due process challenge to CBP's interim measures.

## III. This Court has Jurisdiction to Remedy CBP's Unconstitutionally Imposed Interim Measures

As the Court recognized in *ICON*, the Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i)(1)(D). *See ICON EV LLC*, Slip Op. 26-55 at *11-12; *see also*, *Ninestar Corp. v. United States*, 666 F. Supp. 3d 1351, 1359 (Ct. Int'l Trade 2023) (movant need only show that it is "likely to establish subject matter jurisdiction"). Section 1581(i)(1)(D) confers on this Court "exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for … administration and enforcement with respect to the matters referred to in … subsections (a)–(h) of this section." This civil action challenges CBP's imposition of interim measures under 19 U.S.C. § 1517(e), a law of the United States that provides for administration and enforcement with respect to the matters referred to in subsection (c) of 28 U.S.C. § 1581—namely, section 517 of the Tariff Act of 1930 (19 U.S.C. § 1517).

Waiting for a final evasion determination and review under 28 U.S.C. § 1581(c), by contrast, "would be manifestly inadequate." *Hylsa v. United States*, 22 C.I.T. 44, 46 (1998). Unless this Court exercises its residual jurisdiction, CBP will have the power to bankrupt importers like Atlas through unlawful interim measures and effectively insulate its decisions in EAPA investigations from judicial correction. That is, if the interim measures are not enjoined, Atlas Carts will no longer exist by the end of CBP's EAPA investigation, regardless of which

way the evasion determination comes out. This "grave economic harm which cannot be addressed pursuant to 1581(a-h)" justifies exercising residual jurisdiction under 28 U.S.C. § 1581(i)(1)(D). *Hylsa*, 22 C.I.T. at 48. As the Supreme Court has explained in a similar context, "{i}f the administrative agency has committed errors of law for the correction of which the legislature has provided appropriate resort to the courts, such judicial review would be an idle ceremony if the situation were irreparably changed before the correction could be made." *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 10 (1942).

Indeed, Congress anticipated that 28 U.S.C. § 1581(c) would not be the exclusive means for obtaining judicial review of unlawful actions that CBP takes in EAPA investigations. In EAPA itself, Congress provided that "{n}othing" in the subsection of the statute governing judicial review "shall affect the availability of judicial review to an interested party under any other provision of law." 19 U.S.C. § 1517(g)(3). That provision would be meaningless if this Court could only review CBP's "final" evasion determinations and not, in appropriate instances, CBP's alleged violations of law in EAPA investigations that have final, business-ending effect. *See also NEC Corp. v. United States*, 151 F.3d 1361, 1368–69 (Fed. Cir. 1998) (agreeing that forcing a plaintiff to wait to raise a due-process argument under § 1581(c) after a Commerce investigation concluded, instead of proceeding immediately under § 1581(i), was a "fool's errand").

The interim measures imposed here also constitute reviewable final agency action within the meaning of 5 U.S.C. § 704. *See* 28 U.S.C. § 2640(e) (applying the Administrative Procedure Act (APA) to actions brought under 28 U.S.C. § 1581(i)). The Supreme Court has instructed that the APA's finality requirement is to be applied in a "pragmatic," "flexible" way. *Abbott Labs. v. Gardner*, 387 U.S. 136, 149–50 (1967). "As a general matter, two conditions

must be satisfied for agency action to be 'final': First, the action must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennet v. Spear*, 520 U.S. 154, 177–78 (1997) (quotations and citation omitted). As evidenced by their immediate legal effect on Atlas Carts' imports and immense financial burden, the interim measures plainly have "legal consequences" and determine "rights or obligations," meeting the second part of the *Bennet* test. *Id.*

Further, the particular interim measures that CBP imposed here also meet the first part of the *Bennet* test. These measures, despite the "interim" label, represent the "consummation" of CBP's decision-making process as to those measures and are not "of a merely tentative or interlocutory nature," *id.* (quotation omitted), for two independent reasons.

First, these interim measures are "final" in the APA sense because, although their effect may be time-limited, they are not subject to administrative reconsideration. CBP "memorialized its decision to take corrective action in" in its Initiation Notice, stating that it "*has determined* that there is reasonable suspicion the Importers evaded AD/CVD duties" **Exhibit 3** at 2. *See Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1384 (Fed. Cir. 2012) (emphasizing that an agency communication declaring that the agency "has determined" something connotes final agency action). There is "nothing interlocutory, uncertain, or tentative about this declaration." *Id.* Not only did CBP "declare its decision to" impose interim measures "but it {also} set in motion several irretrievable legal consequences," including requiring live entry. *Id.* Indeed, interim measures are not "revisited" once the EAPA investigation "process moves forward," *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598 (2016);

rather, they are simply lifted upon a negative evasion determination. 19 C.F.R. § 165.27(c). Simply put, there is nothing "advisory" about CBP's decision to imposition interim measures. *Hawkes Co.*, 578 U.S. at 597 (quotation omitted).

Second, even if interim measures *generally* could be thought of as interlocutory in some way (and for the reasons above, they should not be), the interim measures *in this case* would nevertheless reflect "final" agency action as to the purely legal question of CBP's authority to issue them without notice or an opportunity to be heard. Two cases demonstrate this point: *Air Brake Systems, Inc. v. Mineta*, 357 F.3d 632 (6th Cir. 2004) (Sutton, J.), and *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430 (D.C. Cir. 1986). In *Air Brake Systems*, the plaintiff challenged both the content of an advisory letter from an agency and the agency's authority to issue it in the manner that it did. 357 F.3d at 646. Although the court held that there was no final agency action as to the letter's content, the court determined that there *was* final agency action as to the legal question of the agency's authority to issue the letter in the first place. *Id.* at 646–47. Similarly, in *Ciba-Geigy Corp.*, the court held that the agency's pronouncements as to the procedures it could use to require labeling changes constituted final agency action, even though the agency had not yet issued any final order as to the plaintiff. 801 F.2d at 432–39. The case presented a "purely legal issue" as to the agency's authority that would not be "facilitated by further factual development," *id.* at 435; there was "no indication that" the agency's position "was subject to further" change," *id.* at 437; and the agency's pronouncements had significant legal effects on the plaintiff. *Id.* Similarly, here, the issue of whether CBP can impose bank-breaking interim measures without affording importers due process is a purely legal one that requires no assessment of the underlying allegation, the facts, or further intra-agency percolation. And, again, this Court determined in *ICON* that claims seeking redress for CBP's decision to impose prohibitive interim

measures are ripe for judicial review. *ICON EV LLC v. United States*, Slip Op. 26-55 at *8-9. Accordingly, this Court has the power to issue injunctive relief.

That said, while Atlas understands CBP's interim measures to be a final action, Atlas has nonetheless sought to work out a reasonable solution with CBP. In particular, on August 26, 2026, the day after receiving the Initiation Notice from CBP, Atlas submitted a letter to CBP requesting that CBP lift the interim measures or otherwise modify or clarify that CBP would not interim measures on non-subject Vietnamese carts or imports that otherwise are not subject to the scope of the Orders. A copy of this letter is provided at **Exhibit 10**. While CBP has acknowledged receipt of the letter, to date CBP has not responded or. Atlas remains open to working with CBP to try to find a mutually agreed solution; however, given the grave and imminent threat to Atlas' on-going operations, we have no choice but to seek immediate redress via this action and motion for temporary restraining order and preliminary injunction.

**IV. Atlas Carts Will be Irreparably Harmed Absent Injunctive Relief**

Apart from Atlas Carts' likelihood of success on the merits, an injunction is also warranted because Atlas Carts will suffer irreparable harm without one. As detailed above—and as supported not only through declarations but also hard financial evidence—the interim measures will put Atlas Carts out of business within a month, if not sooner. *See* **Exhibit 9** (2025 and interim 2026 balance sheet and income statement, and accompanying declaration, which confirms Atlas Carts' current financial situation as discussed in the Kopay & Messick Declaration). The interim measures effectively require Atlas Carts to immediately pay CBP millions of dollars on Vietnam-origin carts, which will bankrupt Atlas Carts. Kopay & Messick Decl. ¶¶ 16, 20. Absent an injunction, Atlas Carts will default on its financing obligations and be forced to cease operations in less than a month, impacting not only itself, but also dealers, suppliers, its many U.S. customers who will be left with no warranty-repair

services. *See, e.g.*, *id.* ¶¶ 17–20. Additionally, as discussed above, the interim measures inflict unrecoverable damage to Atlas Carts' goodwill, reputation, business opportunities, and market share; the company cannot effectively cease operations during the pendency of CBP's investigation only to re-emerge over a year later. *Id.* ¶ 22.

Nor does Atlas Carts have any ability to prevent these irreparable harms from occurring. Cutting corners, cutting all of its expenses, raising prices, and sourcing or manufacturing in the United States to a sufficient degree to make a meaningful difference in the face of the interim measures are all impossibilities for Atlas Carts. *Id*. ¶¶ 21. Even if Atlas Carts could miraculously remain in business past September 2026 (which is an impossible), it would still suffer unrecoverable damage to its goodwill, reputation, business opportunities, and market share. *See id.* ¶¶ 22. In other words, Atlas Carts is not simply complaining about "significant and permanent monetary injury as a consequence of posting large cash deposits." *Shree Rama Enters. v. United States*, 983 F. Supp. 192, 195 (Ct. Int'l Trade 1997) (quoting *Chilean Nitrate Corp. v. United States*, 11 C.I.T. 538, 540 (1987)). Rather, Atlas Carts has shown that it faces "immediate extinction." *Queen's Flowers de Colombia v. United States*, 947 F. Supp. 503, 507 (Ct. Int'l Trade 1996).

That a refund of unlawfully imposed duties would be available at the conclusion of an EAPA investigation does not render Atlas Carts' imminent injuries reparable. "{T}he irreparable harm inquiry seeks to measure harms that no damages payment, however great, could address." *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). Thus, "a damage remedy" that is not "a meaningful one" cannot negate irreparable harm. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155 (Fed. Cir. 2011). That is the case here. Atlas Carts is facing imminent insolvency as a result of the interim measures. A refund issued to an entity

that no longer exists is no remedy. Nor could a refund repair goodwill, reputation, business relationships, and market share lost while Atlas Carts waits for CBP to reach an evasion determination.

Atlas Carts "has suffered a procedural harm flowing from a likely violation of the APA" and the Constitution that is irreparable without an injunction. *Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255, 1291 (Ct. Int'l Trade 2019). Because of CBP's violation of the law, and regardless of whether CBP later "cures" that violation through a negative determination of evasion, Atlas Carts will in the meantime "have to adjust {its} business plans and behavior accordingly to reflect the imposition of significant additional duties, resulting in lost business opportunities" and "cancelled or significantly reduce{d} projects"—assuming it can even survive long enough to suffer these significant, non-compensable consequences. *Id.* (quotation omitted). Judicial review after an evasion determination, however, cannot fix any of this. Thus, Atlas Carts, because of these likely harms and its imminent insolvency, "would thereby lose any opportunity for meaningful judicial review." *Invenergy*, 422 F. Supp. 3d at 1291. Further "the abrogation of effective judicial review" constitutes "sufficient irreparable injury" justifying injunctive relief. *Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed. Cir. 1983).

Either way, without an injunction, Atlas Carts will suffer irreparable injury directly stemming from CBP's unconstitutionally imposed interim measures.

## V. The Balance of the Equities and Public Interest Favor Atlas Carts

The balance of the equities and the public interest (factors that merge when the government is the defendant) likewise favor Atlas Carts. Indeed, under virtually identical circumstances, this Court found in *ICON* that the balance of equities and public interest favor importers under substantially similar circumstances. *ICON EV*, Slip Op. 26-42 at *16-17.

"The public interest is served by ensuring that governmental bodies comply with the law, and interpret and apply trade statutes uniformly and fairly." *Am. Signature, Inc. v. United States*, 598 F.3d 816, 830 (Fed. Cir. 2010). The public interest would be undermined, by contrast, if CBP were permitted to flout its constitutional obligations to importers. *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest in having government agencies abide by the federal laws that govern their existence and operation." (cleaned up)). In short, we submit that this factor cuts in favor of granting the requested relief in this action.

Nor would an injunction impair CBP's legitimate interest in protecting the revenue. As detailed above, although the interim measures apply to entries made on or after May 20, 2026, these entries consist of carts with Vietnamese frames and Vietnamese material content, not including labor. The carts to which the interim measures are being applied are not subject to the Orders, and CBP lacks a reasonable basis for concluding otherwise. CBP accordingly lacks any legitimate interest in assessing AD/CVD duties to protect revenue. Additionally, the scope of the injunction that Atlas Carts seeks is limited and adequately accounts for CBP's interests. Atlas Carts does not seek to prevent CBP from conducting its EAPA investigation, or from extending or suspending liquidation while the EAPA investigation plays out. Rather, Atlas Carts seeks only to enjoin CBP from rejecting entries, requiring re-filing and live entry, and subjecting Vietnam imports to the AD/CVD cash-deposit rate. This limited relief would provide Atlas Carts an opportunity to defend itself in the EAPA investigation—which is what the Constitution entitles Atlas Carts to and is all that Atlas Carts asks for.

## CONCLUSION

For these reasons, the Court should grant Atlas Carts' motion and enjoin the interim measures.

/s/ Henry D. Almond
Henry D. Almond
David J. Park
Lynn Fischer Fox
Kang Woo Lee
Archana Rao P. Vasa
Sally Alghazali
Jennifer "Ellie" Farrin

*Counsel to Vexas Corporation d/b/a Atlas*

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 942-5000
Fax: (202) 942-5999
E-mail: Henry.Almond@arnoldporter.com

**Dated: August 31, 2026**

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing submission complies with the word-limitation set forth in Standard Chambers Procedure 2(B)(1), and contains 6,466 words.

Dated: August 31, 2026

/s/Henry D. Almond