UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE LEO M. GORDON, SENIOR JUDGE

| | |
|---|---|
| VEXAS CORP. d/b/a ATLAS,<br><br>Plaintiff,<br><br>BINTELLI, LLC,<br><br>Consolidated Plaintiff,<br><br>VENOM EV, LLC,<br><br>Consolidated Plaintiff,<br><br>v.<br><br>UNITED STATES; U.S. CUSTOMS AND BORDER PROTECTION; and ERIC CHOY, in his official capacity as Executive Director, Trade Remedy Law Enforcement Directorate, Office of Trade, U.S. Customs and Border Protection,<br><br>Defendants,<br><br>and<br><br>AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION,<br><br>Defendant-Intervenor. | **PUBLIC VERSION**<br><br>Consol. Court No. 26-03809 |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**


OF COUNSEL

TAMARI J. LAGVILAVA
Senior Attorney
Office of Chief Counsel

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW
Washington, D.C. 20229

October 1, 2026

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

DOUGLAS G. EDELSCHICK
Assistant Director
Department of Justice, Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
(202) 353-9303

ARIE C. EERNISSE
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, NY 10278
(202) 305-5528

*Attorneys for Defendants*

## TABLE OF CONTENTS

I. Plaintiffs Cannot Demonstrate Jurisdiction Pursuant to 28 U.S.C. § 1581(i) ....................... 2

A. The Remedy Provided by Judicial Review Under 28 U.S.C. § 1581(c) Is Not Manifestly Inadequate ........................................................................................ 2

B. Plaintiffs' Reliance on *ICON* Is Misplaced........................................................................ 7

II. Even If the Court Could Have Section 1581(i) Jurisdiction, Plaintiffs' Cases Would Not Be Ripe for Review ........................................................................................ 13

CONCLUSION................................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967)........................................................................................... 13, 14

*All One God Faith, Inc. v. United States*,
589 F. Supp. 3d 1238 (Ct. Int'l Trade 2022)
*aff'd* 129 F.4th 1350 (Fed. Cir. 2025) ................................................................ 3, 4, 5

*Am. Pac. Plywood, Inc. v. United States*,
2023 WL 4288346 (Ct. Int'l Trade 2023)................................................................ 6, 9

*Am. Air Parcel Forwarding v. United States*,
718 F.2d 1546 (Fed. Cir. 1983)
*cert denied,* 466 U.S. 937 (1984)........................................................................... 4

*ARP Materials, Inc. v. United States*,
47 F.4th 1370 (Fed. Cir. 2022) ............................................................................... 2

*Aspects Furniture Int'l, Inc. v. United States*,
607 F. Supp. 3d 1246 (Ct. Int'l Trade 2022) ............................................................ 6

*Chemsol, LLC v. United States,*
755 F.3d 1345 (Fed. Cir. 2014)........................................................................... 2, 5, 6

*Diamond Tools Technology LLC v. United States*,
545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) ....................................................... 3, 6, 13

*Erwin Hymer Grp. N. Am., Inc. v. United States*,
930 F.3d 1370 (Fed. Cir. 2019)........................................................................................4

*Gov't of People's Republic of China v. United States*,
483 F. Supp. 2d 1274 (Ct. Int'l Trade 2007) ...............................................................3, 7

*ICON EV LLC v. United States,*
2026 WL 1470148 (Ct. Int'l Trade 2026) ................................................................*passim*

Int'l Custom Prods., Inc v. United States,
467 F.3d 1324 (Fed. Cir. 2006)........................................................................................3

*Jiangsu Tiangong Tools Co. Ltd. v. United States*,
190 F. Supp. 3d 1218 (Ct. Int'l Trade 2016) ....................................................................7

*Koyo Seiko Co. v. United States*,
715 F. Supp. 1097 (Ct. Int'l Trade 1989) .........................................................................8

*Leco Supply, Inc. v. United States*,
619 F. Supp. 3d 1287 (Ct. Int'l Trade 2023) ....................................................................6

*MacMillan Bloedel Ltd. v. United States*,
16 CIT 331 (1992) .......................................................................................................3, 8

*Nat'l Park Hospitality Ass'n v. U.S. Dep't of Interior*,
538 U.S. 803 (2003)...................................................................................................13, 14

*Phoenix Metal Co. v. United States*,
2024 WL 2891503 (Ct. Int'l Trade 2024),
*appeal dismissed*, 2024 WL 4534014 (Fed. Cir. 2024) ....................................................6

*PPG Industries, Inc. v. United States*,
525 F. Supp. 883, 885 (Ct. Int'l Trade 1981) ...................................................................8

*Rimco v. United States*,
98 F.4th 1046 (Fed. Cir. 2024) ..........................................................................................7

*Smith Corona Corp. v. United States*,
718 F. Supp. 63 (Ct. Int'l Trade 1989) .............................................................................8

*Sunpreme Inc. v. United States*,
892 F.3d 1186 (Fed. Cir. 2018).....................................................................................2, 3

*Sunpreme Inc. v. United States,*
946 F.3d 1300 (Fed. Cir. 2020)........................................................................................9

*Superior Commer. Sols., LLC v. United States,*
811 F. Supp. 3d 1363 (Ct. Int'l Trade 2025) .................................................................. 6, 7

*Vietnam Finewood Co. Ltd v. United States*,
466 F. Supp. 3d 1273 (Ct. Int'l Trade 2020) .............................................................. 3, 5, 6, 7

**Statutes**

19 U.S.C. § 1500(c) ........................................................................................................ 9

19 U.S.C. § 1517............................................................................................................ 2, 3

19 U.S.C. § 1517(b)(1) ..................................................................................................... 8

19 U.S.C. § 1517(e) ......................................................................................................... 8

19 U.S.C. §§ 1517(g) ....................................................................................................... 6

19 U.S.C. § 1517(g)(1) ..................................................................................................... 2

19 U.S.C. §§ 1517(g)(2)(A) ............................................................................................. 2

19 U.S.C. §§ 1517(g)(2)(B) .............................................................................................. 2

28 U.S.C. § 1581........................................................................................................ 2, 3, 4, 7

28 U.S.C. § 1581(a) ......................................................................................................... 6

28 U.S.C. § 1581(c) ................................................................................................... *passim*

28 U.S.C. § 1581(i)..................................................................................................... *passim*

**Regulations**

*Less-Than-Fair- Value and Countervailing Duty Investigations of Certain Low Speed Personal Transportation Vehicles from the People 's Republic of China: Final Scope Decision Memorandum* (Dep't of Commerce June 16, 2025), available at https://access.trade.gov/frnotices
............................................................................................................................... 10

*Notice of Initiation of Investigation and Interim Measures – EAPA Cons. Case 8286*
(CBP Aug. 25, 2026) ................................................................................. 10, 11, 12, 13

*Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order; Amended Final Determination of Countervailing Duty Investigation and Countervailing* Duty Order
90 Fed. Reg. 38,759 (Dep't of Commerce Aug. 12, 2025) .................................................... 9, 10

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE LEO M. GORDON, SENIOR JUDGE

VEXAS CORP. d/b/a ATLAS,

Plaintiff,

BINTELLI, LLC,

Consolidated Plaintiff,

VENOM EV, LLC,

Consolidated Plaintiff,

v.

UNITED STATES; U.S. CUSTOMS AND BORDER PROTECTION; and ERIC CHOY, in his official capacity as Executive Director, Trade Remedy Law Enforcement Directorate, Office of Trade, U.S. Customs and Border Protection,

Defendants,

and

AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION,

Defendant-Intervenor.

**PUBLIC VERSION**

Consol. Court No. 26-03809

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

## I. Plaintiffs Cannot Demonstrate Jurisdiction Pursuant to 28 U.S.C. § 1581(i)

### A. The Remedy Provided by Judicial Review Under 28 U.S.C. § 1581(c) Is Not Manifestly Inadequate

As explained in Defendant's Motion to Dismiss and Opposition to Plaintiffs' Motions for a Temporary Restraining Order and Preliminary Injunction, the scope of jurisdiction under 28 U.S.C. § 1581(i) is "strictly limited." *ARP Materials, Inc. v. United States*, 47 F.4th 1370, 1377 (Fed. Cir. 2022). Section 1581(i) may not be invoked when "jurisdiction under another subsection of § 1581 *is or could have been available*, unless the remedy provided under that other subsection would be manifestly inadequate." *Id.*; *see also Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018).

For this proceeding, the Enforce and Protect Act (EAPA) specifically provides subject-matter jurisdiction pursuant to 28 U.S.C. § 1581(c) over "any civil action commenced under . . . section 517 of the Tariff Act of 1930 [codified at 19 U.S.C. § 1517]." Section 1517, in turn, provides for judicial review of a determination of "whether covered merchandise was entered into the customs territory of the United States through evasion." 19 U.S.C. § 1517(g)(1). A section 1581(c) challenge may include whether CBP "fully complied with all procedures under subsections (c) and (f)" and whether CBP's "determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. §§ 1517(g)(2)(A) and (B).

Here, plaintiffs purport to invoke subsection 1581(i) jurisdiction to challenge the imposition of interim measures in an EAPA investigation. Pl. Vexas' Compl. ¶ 16; Pl. Bintelli's Compl. ¶ 16; Pl. Venom's Compl. ¶ 16.The Federal Circuit and this Court have previously rejected similar actions, holding that when "relief is prospectively and realistically available under another subsection of 1581," a plaintiff cannot invoke jurisdiction under subsection

1581(i). *Chemsol, LLC v. United States,* 755 F.3d 1345, 1354 (Fed. Cir. 2014); *accord Vietnam Finewood Co. Ltd v. United States*, 466 F. Supp. 3d 1273 (Ct. Int'l Trade 2020). The Court's review of CBP's "determination as to evasion may encompass interim decisions subsumed into the final determination." *All One God Faith, Inc. v. United States*, 589 F. Supp. 3d 1238, 1246–47 (Ct. Int'l Trade 2022), *aff'd*, 129 F.4th 1350 (Fed. Cir. 2025) (citing *Diamond Tools Technology LLC v. United States*, 545 F. Supp. 3d 1324, 1341 (Ct. Int'l Trade 2021)). Thus, together, 19 U.S.C. § 1517 and 28 U.S.C. § 1581(c) contemplate that all interim decisions leading up to the final determination in the EAPA investigation are subsumed into the final determination and are subject to judicial review when the final determination is reviewed.

Plaintiffs argue that the delay inherent in relief under Section 1581(c) is sufficient to create manifest inadequacy, *e.g.,* Pl. Vexas' Opp. to Mot. to Dismiss (Vexas' Opp.) at 2, but this is inconsistent with the controlling precedents of the Federal Circuit and persuasive cases of this Court, as demonstrated in our opening brief. *See* Mot. to Dismiss at 13 ("delays inherent in the statutory process do not render it manifestly inadequate") (quoting *Sunpreme*, 892 F.3d at 1193, and *Int'l Custom Prods., Inc v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006)), at 15 (if plaintiffs "will have a meaningful opportunity after the final determination to challenge Commerce's decision ..., then the court must stay its hand at [the preliminary] stage of the proceedings") (quoting *MacMillan Bloedel Ltd. v. United States*, 16 CIT 331, 332 (1992) (involving challenge to denial of exclusion request)), at 16-17 (delay of review until end of Commerce's countervailing duty investigation not significant enough to make jurisdiction under section 1581(c) manifestly inadequate) (citing *Gov't of People's Republic of China v. United States*, 483 F. Supp. 2d 1274, 1281-82 (Ct. Int'l Trade 2007)).

Also, as a practical matter, if delay were a sufficient reason to invoke Section 1581(i) jurisdiction, then jurisdiction under the other subsections of Section 1581 would be swallowed up because every administrative process involves delay. *Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370, 1374 (Fed. Cir. 2019) (overly broad interpretation of § 1581(i) would threaten to swallow specific grants of jurisdiction contained within other subsections). The Court would be put in the uncomfortable position of making case-by-case judgment calls on how much delay is too much, leading to inconsistent and subjective outcomes. The traditional avenue for relief under a subsection of section 1581 other than 1581(i) "was not intended to be so easily circumvented, whereby it would become merely a matter of election by the litigant." *Am. Air Parcel Forwarding v. United States*, 718 F.2d 1546, 1550 (Fed. Cir. 1983), *cert. denied,* 466 U.S. 937 (1984).

In their opposition briefs responding to our motion to dismiss, plaintiffs Bintelli and Venom cite to *All One God Faith* and the *ICON* motion to dismiss opinion and argue that interim decisions need not be reviewed after a final determination has been rendered. Pl. Bintelli's Opp. to Mot. to Dismiss (Bintelli's Opp.) at 3; Pl. Venom's Opp. to Mot. to Dismiss (Venom's Opp.) at 3; *All One God Faith*, 589 F. Supp. 3d 1238; *ICON EV LLC v. United States*, Ct. No. 26-02759, 2026 WL 1470148 (Ct. Int'l Trade May 26, 2026). Plaintiffs incorrectly suggest that *All One God Faith* is notable for "contradict[ing] CBP's assertion that there is a bright-line rule that challenges to interim decisions must always await a final determination." Bintelli's Opp. at 3; Venom's Opp. at 3. *All One God Faith*'s statement that "the Court's review of CBP's determination as to evasion may encompass interim decisions subsumed into the final determination" demonstrates that the imposition of interim measures may be reviewed with a final determination under EAPA, if at all. *All One God Faith*, 589 F. Supp. 3d at 1246 (internal

quotation marks omitted). This merely confirms that the remedy afforded by Section 1581(c), invoked by the plaintiffs in *All One God Faith*, is not manifestly inadequate because interim decisions may be reviewed when the Court reviews a final determination. *All One God Faith* did not hold or purport to decide whether the Court may review interim measures under Section 1581(i) *before* CBP issues a final determination under EAPA. We address *ICON* further below.

Plaintiffs' attempts to distinguish this case from *Vietnam Finewood*, *Chemsol* and *Leco Supply* also ring hollow. To begin, plaintiffs argue that *Vietnam Finewood* is factually inapposite because it involved "a challenge to CBP's alleged failure to complete its EAPA investigation within the statutory period and to CBP's allegedly deficient and dilatory referral of the matter to Commerce for a scope determination." Bintelli's Opp. at 3-4; Venom's Opp. at 3-4. But, as explained in our opening brief, the plaintiffs in the case *also* challenged "Customs' imposition of interim measures" against the subject importers, which included "cash deposits in excess of 200% ad valorem" and "'live entry' requirements on all future imports from the subject importers." Mot. to Dismiss at 9-10 (citing *Vietnam Finewood*, 466 F. Supp. 3d at 1279-80).

The Court in *Vietnam Finewood* held that the importers "will be able to avail themselves of jurisdiction pursuant to 28 U.S.C. § 1581(c) in order to challenge Customs' final determination and administrative appeal, as well as any procedural decisions merged into the same, and the remedy provided under that subsection is not manifestly inadequate." 466 F. Supp. 3d at 1284. This Court cited *Chemsol*, 755 F.3d at 1353-54, for the proposition that "[t]he court's review of Customs' determination as to evasion may encompass interim decisions subsumed into the final determination." Even if *Vietnam Finewood* also addressed the questions of whether CBP had failed to complete its EAPA investigation within the statutory period and whether CBP's referral of the matter to the Department of Commerce for a scope determination

was deficient, the Court still held that any procedural (interim) decisions subsumed into the final determination are subject to judicial review via challenge to the final determination and administrative appeal. *Vietnam Finewood*, 466 F. Supp. 3d at 1284; *see also* Section II below on ripeness.

Plaintiffs also argue that *Chemsol* is factually inapposite because the plaintiff in that case had "challenged CBP's extension of liquidation deadlines in a context unrelated to EAPA interim measures and found appropriate jurisdiction under Section 1581(a)." Bintelli's Opp. at 4; Venom's Opp. at 4. This is a distinction without a difference. *Chemsol* included a statement that interim decisions are subsumed into the final determination, 755 F.3d at 1353-54, and the existence of Section 1581(a) jurisdiction necessarily means that Section 1581(i) jurisdiction was not available. Similarly, *Leco Supply* is an example of a case in which an importer appropriately waited for the final EAPA determination to be rendered and then sought judicial review pursuant to section 1581(c), as expressly permitted by Section 1517(g). *Leco Supply, Inc. v. United States*, 619 F. Supp. 3d 1287 (Ct. Int'l Trade 2023).

Plaintiffs also fail to address the numerous other authorities in which the Court summarily rejected importers' challenges to the imposition of interim measures in the context of CBP's final determinations of evasion. Mot. to Dismiss at 12 (citing *Phoenix Metal Co. v. United States*, No. 23-00048, 2024 WL 2891503, at *8 (Ct. Int'l Trade June 10, 2024), *appeal dismissed*, No. 2024-2222, 2024 WL 4534014 (Fed. Cir. Oct. 21, 2024); *Am. Pac. Plywood, Inc. v. United States*, No. 20-03914, 2023 WL 4288346, at *7-8 (Ct. Int'l Trade June 22, 2023); *Aspects Furniture Int'l, Inc. v. United States*, 607 F. Supp. 3d 1246, 1273 (Ct. Int'l Trade 2022); *Diamond Tools Technology*, 545 F. Supp. 3d at 1341.

Finally, plaintiffs challenge the Government's discussion of *Superior Commer. Sols., LLC v. United States,* 811 F. Supp. 3d 1363 (Ct. Int'l Trade 2025), *appeal pending*, No. 2026-1376 (Fed. Cir.). Bintelli's Opp. at 4; Venom's Opp. at 4. Plaintiffs cited *Superior Commercial* as justification for challenging the interim measures. But, as we demonstrated in our motion to dismiss, the judgment in *Superior Commercial* is non-final and currently on appeal, and the jurisdictional underpinnings of that case are dissimilar to this case. Mot. to Dismiss at 11-12 (citing Pl. Vexas' Mot. for TRO and PI at 11; Pl. Bintelli's Mot. for TRO and PI at 17, 21-22; Pl. Venom's Mot. for TRO and PI at 17, 22; *Superior Com. Sols., LLC v. United States,* 811 F. Supp. 3d 1363 (Ct. Int'l Trade 2025), *appeal pending*, No. 2026-1376 (Fed. Cir.)).

**B. Plaintiffs' Reliance on *ICON* Is Misplaced**

Plaintiffs rely heavily on the motion to dismiss opinion in *ICON*, 2026 WL 1470148. As demonstrated in our opening brief, however, *ICON* is not persuasive for several reasons. Mot. to Dismiss at 12, 15-17. First, prior to *ICON*, the Court had summarily rejected importers' challenges to the imposition of interim measures in the context of challenges to CBP's final determinations of evasion. Second, the Court's analysis of "manifest inadequacy" in the *ICON* decision was tied to the financial difficulties of ICON and its conclusion that the EAPA statutory framework for judicial review "essentially precludes ICON from vindicating a constitutional right" (*see also* Vexas' Opposition at 4, making similar arguments, relying on *ICON*), but in fact no such right exists. Third, with all respect, *ICON* erroneously departed from the proper analysis of manifest inadequacy, which is more appropriately viewed as a legal sufficiency test than a party-specific test. Fourth, this Court and the Federal Circuit have repeatedly rejected plaintiffs' arguments based on "manifest inadequacy" because a viable alternative for relief existed within another subsection of section 1581, as one does here. *See* Mot. to Dismiss at 16-17 (citing

*Vietnam Finewood,* 466 F. Supp. 3d at 1287; *Jiangsu Tiangong Tools Co. Ltd. v. United States*, 190 F. Supp. 3d 1218, 1222 (Ct. Int'l Trade 2016); *Rimco v. United States*, 98 F.4th 1046, 1054 (Fed. Cir. 2024); *Gov't of People's Republic of China*, 483 F. Supp. 2d at 1281-1282; *MacMillan Bloedel*, 16 CIT at 332; *Smith Corona Corp. v. United States*, 718 F. Supp. 63 (Ct. Int'l Trade 1989); *Koyo Seiko Co. v. United States*, 715 F. Supp. 1097 (Ct. Int'l Trade 1989); *PPG Industries, Inc. v. United States*, 525 F. Supp. 883, 885 (Ct. Int'l Trade 1981)).

Plaintiffs continue to rely on *ICON* to argue that their merchandise falls outside the scope of the Orders.[1] First, it is important to remember the standard under which CBP is operating at this stage of the proceedings. Under EAPA, Federal agencies or interested parties — including domestic and foreign manufacturers, producers, exporters, certified unions or recognized unions or groups of workers; and trade or business associations in a particular industry — may submit allegations to CBP that merchandise covered by an AD/CVD order has entered the United States through evasion. If such allegations reasonably suggest that evasion is occurring, within 15 business days of receiving an allegation, CBP must initiate an investigation. 19 U.S.C. § 1517(b)(1).

At these early stages of the proceedings, the EAPA statute does not require CBP to conduct a scope inquiry. Rather, it requires CBP to make an initial determination of whether there is reasonable suspicion of evasion and, if so, CBP must issue interim measures. 19 U.S.C. § 1517(e). The discussion in *ICON* suggesting the CBP should render a definitive decision of whether merchandise is within the scope of the Orders at this stage of the proceedings is inconsistent with the "reasonable suspicion" standard.

[1] As the parties in this case continue to dispute the breadth of the AD/CVD Orders' scope, it is important to note that the statute affords CBP the discretion to refer the matter to Commerce for a scope determination at any time, and it will do so if necessary.

Plaintiffs admit that there is a "low threshold surrounding reasonable suspicion." Bintelli's Opp. at 14; Venom's Opp. at 14. Indeed, the Court has emphasized that only "slight evidence" or a "very small amount" is needed for reasonable suspicion; such that "it is inappropriate to flyspeck the evidence piece-by-piece to analyze what each item shows or does not show—the question is what all the evidence at the relevant stage of the investigation showed." *Am. Pac. Plywood*, 2023 WL 4288346, at *9. CBP is not required to make a final finding on whether merchandise is subject to the scope of an AD/CVD order when finding reasonable suspicion near the beginning of an EAPA investigation. The agency's role in determining whether reasonable suspicion exists in an EAPA investigation is analogous to its role in enforcing the laws at the border at the time of entry for both people and goods. CBP must make a threshold decision based on the evidence before it, even if the order (in the EAPA context) or status of the person entering (in the border enforcement context) is ambiguous. *See Sunpreme Inc. v. United States,* 946 F.3d 1300, 1320-21 (Fed. Cir. 2020) (noting that "Customs is tasked with determining, for every imported product, whether the product falls within the scope of an antidumping or countervailing duty order. 19 U.S.C. § 1500(c)" and "Customs is statutorily tasked with answering a yes-or-no question as to whether the order applies, in order to fix the duty owed. When the order is ambiguous, Customs is nonetheless called upon to answer the question").

Second, plaintiffs advance an overly narrow interpretation of the scope of the Orders. As a general matter, the scope of the Orders covers LSPTV parts.[2] But plaintiffs rely on an

[2] The general scope language begins: "The merchandise covered by these orders consists of certain low speed personal transportation vehicles (LSPTVs) and subassemblies thereof, whether finished or unfinished and whether assembled or unassembled, with or without tires, wheels, seats, steering columns and steering wheels, canopies, roofs, or batteries." AD/CVD Orders at 38,763.

exclusion in the scope language. That exclusion is for LSPTV parts that are imported by themselves on separate bills of lading "*when accompanied by the appropriate certification*." *Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order; Amended Final Determination of Countervailing Duty Investigation and Countervailing Duty Order*, 90 Fed. Reg. 38,759, 38,763 (Dep't of Commerce Aug. 12, 2025) (AD/CVD Orders) (emphasis supplied). The appropriate certification requires the importer to attest that the LSPTV parts (i) are being imported separately, *and* (ii) *will not be assembled* by the importer (or a related entity) with subject subassemblies or subject unfinished LSPTVs. *See* Memorandum from Jerry Xiao and Gordon Struck to Scot Fullerton re: *Less-Than-Fair-Value and Countervailing Duty Investigations of Certain Low Speed Personal Transportation Vehicles from the People 's Republic of China: Final Scope Decision Memorandum* (Dep't of Commerce June 16, 2025) at 18-20 (Appx. II, "Importer Certification"), available at https://access.trade.gov/frnotices (also at Docket No. 34-8). Commerce established this certification of non-assembly as a requirement for invoking the scope exception to prevent circumvention of the Orders. *Id.* at 3-6. *ICON*'s statement that the Orders have a precise and limited scope – seized upon by plaintiffs here – misread the exception as covering *all* LSPTV parts that are imported separately without regard for whether they were "accompanied by the appropriate certification" of non-assembly. Here, at least some plaintiffs are importers who apparently contend that they submitted "the appropriate certification" with their LSPTV parts; however, CBP had received an allegation that plaintiffs *were assembling* the LSPTV parts after entry in circumvention of the Orders. *Notice of Initiation of Investigation and Interim Measures – EAPA Cons. Case 8286* (CBP Aug. 25, 2026) (NOI) at 13-14. Accordingly, when this dispute

arose, the applicability of the scope exception – for separately imported parts accompanied by an appropriate certification of non-assembly – was a disputed factual question; CBP had to make a judgment call when determining whether a reasonable suspicion of evasion existed.

The holding in *ICON*, in any event, should be limited in its application as the Court did not have occasion to consider that CBP may afford importers with an opportunity to explain their entries through CF-28s, and that such information may inform CBP's "reasonable suspicion" finding (as it did here). In responding to the CF-28s, plaintiffs in this case asserted that they had shifted from importing golf carts from China to importing them from Thailand and Vietnam after the AD/CVD order was imposed. However, CBP found numerous factual discrepancies in plaintiffs' representations, for example:

- The purported Thai and Vietnamese manufacturers did not advertise golf cart production. NOI at 7 (Bintelli); NOI at 11 (Venom).
- One of the suppliers for Vexas [[[redacted]]] is alleged to be a warehouse in an industrial park in Vietnam and not a manufacturing facility. NOI at 7; *see also* NOI at 8-9 (Bintelli's Thai supplier, [[[redacted]]], is alleged to be an assembler and distributor, not a manufacturer of LSPTVs).
- Bintelli was allegedly importing massive quantities of what it declared as golf balls from suppliers that are known manufacturers of golf carts, while not advertising that it sold golf balls. NOI at 6; *see also* NOI at 10 (Venom) (alleged misclassification of imports as golf balls and accessories, accompanied by non-advertisement of golf ball sales).

- The alleger provided evidence that the companies switched to importing golf cart parts after the AD/CVD order was imposed. NOI at 5 (Bintelli); NOI at 9-10 (Venom); NOI at 12 (Vexas).

After receiving the allegation, CBP assessed that the facts provided by the alleger were correct. NOI at 16-17 (Bintelli); NOI at 19-20 (Venom); NOI at 22 (Vexas). That finding, in combination with the factual information submitted in the allegation, was a sufficient basis for a reasonable suspicion that the importers continued to import subject merchandise, notwithstanding their protestations and questionable CF-28 responses. In their CF-28 responses, the importers submitted extensive information that purported to definitively identify where the merchandise was produced and what was being imported. However, after reviewing that information, CBP found that the responses raised more questions than answers. In the Notice of Initiation, CBP explained that the extent of manufacturing operations in Thailand and Vietnam was not clear from plaintiffs' responses. NOI at 17-18 (Bintelli); NOI at 21 (Venom); NOI at 23 (Vexas) (stating that [[redacted]] is performed in China).

For Bintelli, the information submitted as part of the CF-28 response did not trace raw material inputs to their country of origin. NOI at 17-18. Similarly for Vexas, CBP found that it was not clear from the documentation where the materials used in the [[redacted]] were sourced from. NOI at 23-24 (stating that the documentation does not provide detailed production steps); *see also* NOI at 19 (stating that final payment for golfcarts was made to [[redacted]]) CBP assessed that the CF-28 responses did not provide information that would be sufficient to trace production. NOI at 18 (Bintelli); NOI at 21

(Venom); NOI at 22-24 (Vexas). This, combined with the fact that the former Chinese suppliers of golf carts are still supplying parts (NOI at 19 (Bintelli); NOI at 21-22 (Venom); NOI at 23-24 (Vexas)), raised questions—and gave rise to a reasonable suspicion—as to the true nature of plaintiffs' partners' operations in Thailand and Vietnam.

Further, CBP previously had found that all three importers had entries that were within the scope of the order. NOI at 17 (Bintelli); NOI at 20 (Venom); NOI at 22 (Vexas). CBP had a reasonable suspicion that they continued to import subject merchandise, notwithstanding their protestations and questionable CF-28 responses.

In summary, the allegation contained serious claims that the three plaintiffs were importing subject merchandise by means of evasion, and CBP possessed a reasonable suspicion based on the record that included the plaintiffs' CF-28 responses. CBP will continue to evaluate plaintiffs' assertions as the EAPA investigation proceeds. As demonstrated above, the question of manifest inadequacy should be viewed as a legal one that does not depend on the factual circumstances of individual plaintiffs. But to the extent that plaintiffs attempt to inject party-specific merits questions into the jurisdictional inquiry and make factual assertions, the Court should reject plaintiffs' suggestion that the Court can simply follow *ICON* without considering the factual record in this consolidated case.

## II. Even If the Court Could Have Section 1581(i) Jurisdiction, Plaintiffs' Cases Would Not Be Ripe for Review

As we explained in our motion to dismiss, ripeness "is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hospitality Ass'n v. U.S. Dep't of Interior*,

538 U.S. 803, 807–08, (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–149 (1967)). The ripeness inquiry evaluates "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hospitality*, 538 U.S. at 807 (citing *Abbott Labs*., 387 U.S. at 148).

As the "moniker" suggests, "interim measures are temporary." *Diamond Tools Technology*, 545 F. Supp. 3d at 1341. In the case before the Court, CBP has yet to complete its EAPA investigation. As explained above, after CBP issues its final determination, to the extent the agency finds that plaintiff has evaded the AD/CVD duties, plaintiff will be able to assert its claims in this Court by commencing an action using the statutorily prescribed jurisdictional pathway under 28 U.S.C. § 1581(c).

Plaintiffs' contention that CBP's decision was final because "it marked the consummation of {CBP}'s reasonable suspicion determination" (Bintelli's Opp. at 8; Venom's Opp. at 9) improperly grafts a purely Administrative Procedure Act (APA) standard onto a non-APA statutory action that is explicitly subject to review under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1517(g). As in other section 1581(c) cases, the validity of the "reasonable suspicion" determination and plaintiffs' corresponding liability for cash deposits are subject to adjustment or reversal in the final determination. Similarly, preliminary determinations are not final because they are still subject to adjustment based on the final determination.

Plaintiffs argue that the decision is final because it has an immediate and "direct effect" on plaintiffs' "day-to-day business" that is "not dependent upon" CBP's final determination. This argument erroneously presumes the existence of an APA cause of action under section 1581(i).

Plaintiffs' argument that their claims are ripe for judicial review because they have "already endured the legal consequences of CBP's imposition of interim measures, which renders them final and separate from CBP's ultimate EAPA determination" (Bintelli's Opp. at 7-8) lacks legal authority.

Further, it bears noting that plaintiff Bintelli has miscalculated the financial impact arising from the cash deposits and live entries at issue. It alleges that it will suffer a "potential [[ [redacted] ]] in jeopardy that is tied to past imports from September 7, 2024 to August 18, 2026" Bintelli's Opp. at 13. As explained in the motion to dismiss, CBP has no intention to impose cash deposits or live entry requirements to pre-August 18, 2026 entries, so Bintelli's repeated references to such pre-August 18, 2026 losses are irrelevant to this injunction/motion to dismiss dispute.

Meanwhile, Venom and Vexas do not indicate that they would face such pre-August 18, 2026 deprivation, but they also do not convincingly prove the alleged deprivation they will face from cash deposits and live entry requirements from August 18, 2026 onward. For instance, our motion to dismiss pointed out that there is a plaintiff with greater profits than anticipated duties recently, making that party's claims of bankruptcy ring hollow. Notably, Venom responded to this, calculating the alleged approximate amount in cash deposits for every ship in port as a percentage of net profit in the past few years. Venom's Opp. at 19. However, it neglected to mention that it has a net income from January 1 to August 20, 2026 of [[ [redacted] ]], meaning that cash deposits for a shipment accepted in port would constitute [[ [redacted] ]] of its net income for the first eight months of the year. This is hardly a bankruptcy-inducing amount. One cannot determine based on Venom's filing how many shipments it would send in the interim relief period starting from August 18, 2026, but [[ [redacted]

[redacted]]].

Venom's alleged deprivation is purely speculative and hypothetical.

**CONCLUSION**

For these reasons, defendants respectfully request that the Court grant the motion to dismiss for lack of subject-matter jurisdiction.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

DOUGLAS G. EDELSCHICK
Assistant Director
Department of Justice, Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
(202) 353-9303

By: /s/ Arie C. Eernisse
ARIE C. EERNISSE
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, NY 10278
(202) 598-0904

*Attorneys for Defendants*

OF COUNSEL

TAMARI J. LAGVILAVA
Senior Attorney
Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW
Washington, D.C. 20229

October 1, 2026

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing submission complies with the word-limitation set forth in the Standard Chambers Procedure 2(B)(1), and contains 4,513 words.

Dated: October 1, 2026

/s/ Arie C. Eernisse
Arie Chase Eernisse