**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE THE HONORABLE LEO M. GORDON, SENIOR JUDGE**

| | |
|---|---|
| **VEXAS CORP. d/b/a ATLAS** | |
| **Plaintiff,** | |
| **BINTELLI, LLC,** | |
| **Consolidated Plaintiff,** | |
| **VENOM EV, LLC,** | |
| **Consolidated Plaintiff,** | |
| **v.** | **Consol. Court No: 26-03809** |
| **UNITED STATES; U.S. CUSTOMS AND BORDER PROTECTION; and ERIC CHOY, in his official capacity as Executive Director, Trade Remedy Law Enforcement Directorate, Office of Trade, U.S. Customs and Border Protection,** | **NONCONFIDENTIAL VERSION** |
| **Defendants.** | |

**PLAINTIFF VEXAS CORP.'S REPLY TO THE GOVERNMENT'S COMBINED MOTION TO DISMISS AND RESPONSE TO TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION MOTIONS**

Henry D. Almond
David J. Park
Lynn Fischer Fox
Kang Woo Lee
Archana Rao P. Vasa
Sally Alghazali
Jennifer "Ellie" Farrin

*Counsel to Vexas Corporation d/b/a Atlas*

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 942-5000
Fax: (202) 942-5999
E-mail: Henry.Almond@arnoldporter.com

**Dated: September 25, 2026**

**TABLE OF CONTENTS**

Page

I. Response to the Government's Motion To Dismiss ....... 1

A. The Court Has Jurisdiction Over This Action ....... 1

B. CBP's Violation of Plaintiff's Due Process Rights and Interim Measures Decision Are Ripe for Review ....... 5

C. Plaintiff Has a Protected Property Interest ....... 7

II. Reply to the Government's Opposition to Vexas Corp.'s Motions for Preliminary Injunction and Temporary Restraining Order ....... 8

A. Likelihood of Success on the Merits ....... 8

B. Irreparable Harm ....... 10

C. The Balance of the Equities and Public Interest Favor Vexas Corp. ....... 12

III. Reply to Defendant-Intervenor's Response in Opposition to Vexas Corp.'s Motion for a Temporary Restraining Order and Preliminary Injunction ....... 13

# TABLE OF AUTHORITIES

## Cases

*Am. Pac. Plywood, Inc. v. United States*,
2023 WL 4288346, at *7 (Ct. Int'l Trade June 22, 2023) .......... 7

*Aspects Furniture Int'l, Inc. v. United States*,
607 F. Supp. 3d 1246, 1271 (Ct. Int'l Trade 2022) .......... 7

*Diamond Tools Tech. v. United States*,
545 F. Supp. 3d 1324, 1340–41 .......... 7

*ICON EV LLC v. United States*,
Ct. No. 26-02759, Slip Op. 26-42 (Ct. Int'l Trade Apr. 24, 2026) ..........2, 7, 9-10, 12

*ICON EV LLC v. United States*,
Ct. No. 26-02759, Slip Op. 26-55, 2026 WL 1470148 (Ct. Int'l Trade May 26, 2026)......2-7

*ICON EV LLC v. United States*,
Ct. No. 26-02759, Slip Op. 26-88 (Ct. Int'l Trade Aug. 10, 2026)..........2, 13

*Karem v. Trump*,
960 F.3d 656, 668 (D.C. Cir. 2020).......... 12

*Mathews v. Eldridge*,
424 U.S. 319 (1976)..........9-10

*Nken v. Holder*,
556 U.S. 418, 435 (2009).......... 8

*Phoenix Metal Co. v. United States*,
2024 WL 2891503, at *9 (Ct. Int'l Trade June 10, 2024) .......... 7

*Royal Brush Mfg., Inc. v. United States*,
75 F.4th 1250, 1257 (Fed. Cir. 2023) .......... 9

*Sunpreme Inc. v. United States*,
892 F.3d 1186, 1191 (Fed. Cir. 2018) .......... 2

*Superior Commercial Solutions, LLC v. United States*,
811 F. Supp. 3d 1363, 1376 (Ct. Int'l Trade 2025) .......... 9

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7, 20 (2008).......... 8

**Statutes**

19 U.S.C. § 1517(c)(1)(A) .......... 2

19 U.S.C. § 1517(c)(1)(B) .......... 2

19 U.S.C. § 1517(f)(2) .......... 2

28 U.S.C. § 1581(c).......... 1-4

28 U.S.C. § 1581(i).......... 1-2

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **VEXAS CORP. d/b/a ATLAS** | |
| **Plaintiff,** | |
| **BINTELLI, LLC,** | |
| **Consolidated Plaintiff,** | |
| **VENOM EV, LLC,** | |
| **Consolidated Plaintiff** | |
| **v.** | **Consol. Court No: 26-03809** |
| **UNITED STATES; U.S. CUSTOMS AND BORDER PROTECTION; and ERIC CHOY, in his official capacity as Executive Director, Trade Remedy Law Enforcement Directorate, Office of Trade, U.S. Customs and Border Protection,** | |
| **Defendants.** | |

**PLAINTIFF VEXAS CORP.'S REPLY TO THE GOVERNMENT'S COMBINED MOTION TO DISMISS AND RESPONSE TO TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION MOTIONS**

## I. Response to the Government's Motion To Dismiss

### A. The Court Has Jurisdiction Over This Action

The Government's principal argument in favor of dismissing this action is that jurisdiction is properly under 28 U.S.C. § 1581(c), and not 28 U.S.C. § 1581(i), because subsection (c), in the Government's view, is not "manifestly inadequate." *See* Defendants' Motion to Dismiss and Opposition to the Plaintiffs' Motions for a Temporary Restraining Order and Preliminary Injunction, ECF No. 35 (Sept. 18, 2026) ("Gov't Response") at 9-17. The Government's theory is essentially that Vexas Corporation (d/b/a Atlas "Vexas Corp." or "Atlas

Carts") can seek judicial review at the conclusion of U.S. Customs and Border Protection's ("CBP's") Enforce and Protect Act Investigation. *Id.* The Government correctly recognizes that this Court has recently ruled on virtually identical facts and circumstances and held that the Court does have jurisdiction under 28 U.S.C. § 1581(i). *Id.* at 10-11, *citing ICON EV LLC v. United States*, Ct. No. 26-02759, Slip. Op. 26-55, 2026 WL 1470148 (Ct. Int'l Trade May 26, 2026) ("*ICON II*") at *11-12.[1] While the Government takes issue with this Court's recent decision in *ICON II*, the Government does not meaningfully distinguish the case at hand from *ICON II*, and instead requests "this Court to analyze the question from a fresh perspective." *Id*. at *11.

In *ICON II*, this Court correctly recognized that the Federal Circuit has held that jurisdiction under 28 U.S.C. § 1581(i) would be proper, so long as the remedy provided under any other potentially-applicable subsection would be "manifestly inadequate. *Id*. at *10 (citing *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018)). In analyzing whether a remedy under 28 U.S.C. § 1581(c) would be "manifestly inadequate" to the Plaintiff in that proceeding, the Court placed significant weight on the delay inherent to any remedy under subsection (c). *Id*. at *11. Specifically, the court noted that the EAPA statute would normally require a plaintiff to be subject to interim measures for at least 210 days (*i.e.*, 19 U.S.C. § 1517(c)(1)(A) calls for the agency to issue its final determination within 300 days following initiation, with interim measures imposed 90 days after initiation), plus an additional 60 days for

[1] The Court has issued three separate decisions in the ICON litigation: *ICON EV LLC v. United States et al.*, Ct. No. 26-02759, Slip. Op. 26-42 (Ct. Int'l Trade Apr. 24, 2026) ("*ICON I*"), which addresses the preliminary injunction motion in that case; *ICON EV LLC v. United States et al.*, Ct. No. 26-02759, Slip. Op. 26-55, 2026 WL 1470148 (Ct. Int'l Trade May 26, 2026) ("*ICON II*"), which addresses the Court's jurisdiction and the Defendants' motion to dismiss; and *ICON EV LLC v. United States et al.*, Ct. No. 26-02759, Slip. Op. 26-88 (Ct. Int'l Trade Aug. 10, 2026) ("*ICON III*"), which addresses Defendant-Intervenor's motion to intervene.

the administrative review process under 19 U.S.C. § 1517(f)(2). *See id*. In practice, this timeline can also be extended by 60 additional days. *See* 19 U.S.C. § 1517(c)(1)(B). In total, this means that under the Government's theory, Vexas Corp. would be subject to the 519.23 percent combined AD/CVD duties for *at least* 330 days before judicial review would become available.

While a delay of nearly a year in other circumstances may not satisfy the "manifestly inadequate" standard, here, absent a preliminary injunction, Plaintiff Vexas Corp. will no longer be an operational business by the time jurisdiction becomes available under 28 U.S.C. § 1581(c). As explained in Vexas Corp.'s Preliminary Injunction Motion, absent an injunction, Vexas Corp. will default on its financing obligations and be forced to cease operations in less than a month, and would essentially go bankrupt and wind-down commercial operations in short order. *See* Preliminary Injunction Motion and Motion for a Temporary Restraining Order and accompanying Declaration from Mark Messick and Sanjay Kopay, ECF Nos. 7, 7.1 (Aug. 31, 2026) ("Prelim. Injunction Motion and TRO" and "Messick and Kopay Decl."). The situation remains true today. Recognizing that nearly a month has passed since Mr. Messick and Mr. Kopay detailed the impact interim measures would have on the company, at **Exhibit 1** to this brief we provide an updated statement detailing the conditions the company is currently facing.

Indeed, Vexas Corp. is facing existential economic hardship such that each day its co-CEOs evaluate whether, and how long, the company's capital and inventory can sustain operations. **Exhibit 1** at ¶ 6. As detailed further in **Exhibit 1**, if Vexas Corp. cannot import due to the prohibitive interim measures, it will almost immediately be forced to wind down operations. *Id*. at ¶ 7. As the Court reasoned in *ICON*, "ICON should not be driven to extinction while waiting for a final determination or an appeal of the same when an alleged constitutional deprivation—not the final determination—has caused its existential injury." *ICON II* at *12.

Just like *ICON*, Vexas Corp. should not be driven to extinction while it awaits its right to judicial appeal to accrue for a constitutional violation that has already occurred.

The Government cites to a string of U.S. Court of International Trade and Federal Circuit decisions that suggest delay and financial hardship generally do not render a jurisdictional avenue "manifestly inadequate." *See* Gov't Response at 13-14. What these cases and the Government's argument do not address is this Court's logic and key distinguishing factor in *ICON*: that the injury at issue is not caused by a typical administrative action – the harm is caused by a deprivation of Vexas Corp.'s constitutional right to due process. *ICON* II at *7 (determining that ICON's claims were ripe because "the alleged unconstitutional act – namely the failure to provide due process – has already occurred."). Indeed, there is no administrative process available to remedy a violation of Vexas Corp.'s constitutionally-protected right to due process. Even if Vexas Corp. were to suffer through bankruptcy and closure for the next 330 days awaiting a finally-appealable decision under 28 U.S.C. § 1581(c), the nature of any claim at that stage would be related to CBP's final determination, not CBP's unlawful imposition of interim measures. More fundamentally, at that point, the damage would be done, the harm to Vexas Corp. would be irreparable. Vexas Corp. would be bankrupt and completely non-operational; a non-existent entity cannot seek redress from the Government. The Court in *ICON* addressed these issues and arguments in well-reasoned and detailed footnotes. *See ICON* II at *12-13, fns. 14 and 15 (finding, for example, that "ICON cannot challenge an action if it no longer exists.").

Indeed, Vexas Corp. is left wondering how the Government envisions it could even raise this constitutional challenge in their jurisdictional worldview. The Government would appear to want Vexas Corp. to raise the constitutional violation arguments to CBP itself in the course of

CBP's 210-day EAPA investigation and 60-day administrative review. Only if, through this process, CBP were itself to determine that it did not violate Vexas Corp.'s due process rights could Vexas Corp. then seek judicial review (by which time the company would long be out of business). This suggested outcome is the very definition of "manifestly inadequate," and completely disregards the fact that Vexas Corp.'s constitutional rights have been violated and this Court's reasoning in *ICON*.

In its Motion to Dismiss, the Government does not meaningfully address these arguments, nor does it address the distinguishing constitutional challenge brought by ICON and now by Vexas Corp. Rather, the Government simply argues that "no such constitutional right exists." Gov't Response at 15. As discussed below and established in the *ICON* case, Plaintiff does have a constitutionally protected due process right in these circumstances, and the Court therefore has jurisdiction over this question.

**B. CBP's Violation of Plaintiff's Due Process Rights and Interim Measures Decision Are Ripe for Review**

The Government claims that Vexas Corp.'s claim is not ripe for judicial review, claiming that "CBP has yet to complete its EAPA investigation" and that if Vexas Corp. prevails in the underlying EAPA investigation it "would owe no AD/CVD duties." Gov't Response at 18, 19. These arguments fundamentally miss the point and ignore this Court's reasoning in *ICON II*. In particular, as the Court held in *ICON*, "Counts I & II seek redress for an alleged constitutional violation. These claims are ripe because the alleged unconstitutional act—namely the failure to provide due process—has already occurred." *ICON* II at *7 (record citation omitted). In reaching this decision, the Court again stressed that the Plaintiff stood to go bankrupt absent judicial action. The dire financial situation here is practically identical to the Plaintiff in *ICON*; as Vexas Corp. has repeatedly demonstrated in this proceeding, it is in immediate danger of

going out of business within weeks if these interim measures are not enjoined. *See* Prelim. Injunction Motion and TRO at 18-20; Messick and Kopay Decl. at ¶¶ 10-24; **Exhibit 1** at ¶¶ 4-8.

The Court also stressed that the question at issue – CBP's determination of "reasonable suspicion" – was one that had immediate and final effect under a different legal standard (reasonable suspicion) than required of CBP's final determination (substantial evidence). *See* *ICON II* at *8. In finding that CBP made a final determination by imposing interim measures against ICON, the Court cited to CBP's Initiation Notice to ICON, which read that CBP "has determined that there is a reasonable suspicion that {ICON has} evaded AD/CVD duties" and therefore "has imposed {certain} interim measures". *Id.* Thus, CBP's decision to impose interim measures "marked the consummation of {CBP's} reasonable suspicion determination." *Id.* In the initiation notice at issue here CBP used virtually identical definitive language to impose interim measures, stating that it "has determined that there is a reasonable suspicion of evasion of antidumping (AD) and countervailing (CVD) duties by…Vexas Corp. d/b/a Atlas Carts...Accordingly…CBP *shall* implement interim measures." Prelim. Injunction Motion and TRO and accompanying Exhibit 2 (CBP Email), ECF No. 7.2 (Aug. 31, 2026) (emphasis added).

Additionally, the Court found in *ICON II* that the "imposition of interim measures in this case is more like a regulation with immediate and direct effect on ICON's day-to-day business." *ICON* II at *8 (internal citation omitted). Again, as Vexas Corp. has repeatedly stressed, the interim measures in this case will have an immediate and direct effect on its day-to-day business. *See*, *e.g*., Messick & Kopay Decl. at ¶ 14 ("As a startup, Atlas Carts is dependent on every single shipment to keep production running. Based on current inventory levels and production run rates Atlas Carts will run out of inventory by approximately **[** ]); **Exhibit 1** at ¶ 6 ("Even today, Atlas Carts is facing existential economic hardship such that, as co-CEOs, we

must decide each day whether we have the capital and the inventory to continue operations.”). As CBP’s imposition of interim measures against Vexas Corp. is virtually indistinguishable from the ripe measures imposed in the *ICON* litigation, CBP’s decision here is ripe for judicial review.

In short, the Government has advanced no theory that justifies the Court reaching a different decision in this instance than it did in the *ICON* litigation.

**C. Plaintiff Has a Protected Property Interest**

The Government also argues that Vexas Corp. and importers more broadly do not have a protected property interest in imports, and that absent a protected property interest there can be no viable due process challenge. Gov’t Response at 24-28. Again, the Court in *ICON* directly dealt with this question and concluded that the importer in *ICON* had “a sufficient property interest for purposes of this action.” *ICON* II at *10, fn. 5. There, the Court focused on imports that had already arrived, were in transit, or were in a bonded warehouse as a result of the interim measures in that case. In reaching that decision, the Court looked to decisions which confirm that an importer has a protected property interest in the proper assessment of imported goods. *See ICON* I at *12, fn. 16 (citing *Phoenix Metal Co. v. United States*, 2024 WL 2891503, at *9 (Ct. Int’l Trade June 10, 2024); *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1340–41 (Ct. Int'l Trade 2021); *Am. Pac. Plywood, Inc. v. United States*, 2023 WL 4288346, at *7 (Ct. Int’l Trade June 22, 2023); and *Aspects Furniture Int’l, Inc. v. United States*, 607 F. Supp. 3d 1246, 1271 (Ct. Int’l Trade 2022)).

Here, the interim measures were imposed as early as August 18, 2026, the same day they were announced. Vexas Corp. has since had shipments arrive in the United States; it had shipments on the water at the time the interim measures were announced; and it continues to have shipments en route to the United States as of today. These shipments are detailed in the declaration from Mr. Messick and Mr. Kopay accompanying this brief at **Exhibit 1**. In

particular, Vexas Corp. has just received merchandise valued at approximately **[ ]**, which will allow it to continue manufacturing operations in the immediate term, with additional shipments on the way. This **[ ]** volume of imports, which will sustain manufacturing operations for **[ ]**, would be subject to a total cash deposit payment of approximately **[ ]**. **Exhibit 1** at ¶ 7. Vexas Corp. is similarly situated to *ICON*, where the Court reasoned that there was a legitimate property interest at issue, particularly with respect to the shipments that had already arrived or were close to arriving. These shipments alone are sufficient to constitute a protectable property interest sufficient to establish jurisdiction.

## II. Reply to the Government's Opposition to Vexas Corp.'s Motions for Preliminary Injunction and Temporary Restraining Order

As discussed in our Motions for Preliminary Injunction and Temporary Restraining Order, in evaluating whether to grant such interim relief, the Court considers four factors: (1) whether the movant "is likely to succeed on the merits;" (2) whether the movant is "likely to suffer irreparable harm in the absence of preliminary relief;" (3) whether the "balance of equities tips in {the movant's} favor;" and (4) whether "an injunction is in the public interest." Prelim. Injunction Motion and TRO at 10 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The last two factors merge where, as here, the Government "is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). We addressed these factors in detail in our Motions, and the Government's response does nothing to refute those arguments.

### A. Likelihood of Success on the Merits

As set forth in our Motions, CBP's decision to impose bankrupting interim measures—without notice or opportunity to respond to the allegation that prompted those measures—violated Vexas Corp.'s right to due process. Prelim. Injunction Motion and TRO at 10-14. Rather than repeat the arguments and case citations in our affirmative motions related to the fact

that CBP violated Vexas Corp.'s due process rights, we refer the Court's attention to the discussion in our motions at pages 10-14. The Government's response does not overcome the precedent we cited in our motions, which demonstrates that Vexas Corp. is likely to succeed on the merits.

Moreover, the Government's response does not address (let alone meaningfully refute) the Court's recent decision in *ICON I*. In this Court's first decision in the *ICON* case, the Court addressed each of the arguments the Government advances in its response. *ICON* I at *11-13. There, the Court looked to *Superior Commercial Solutions, LLC v. United States*, 811 F. Supp. 3d 1363, 1376 (Ct. Int'l Trade 2025) and *Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250, 1257 (Fed. Cir. 2023), and concluded that procedural due process considerations do apply in an EAPA investigation context. These cases and *ICON* apply equally to the case at hand.

The Court went on to apply the *Mathews* factors, *i.e.*, "(1) the private interest at stake; (2) the risk of an erroneous deprivation through the procedures used and the probative value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *ICON* I at *11-13. In applying this framework at each turn the Court found that the factors cut in the Plaintiff's favor. So too do they cut in our favor here. First, the private interest at stake is avoiding the imposition of a 519.23 percent combined AD/CVD rate[2] that will push the company out of business within a month. The Government in

[2] To be clear, we are not suggesting that this cash deposit rate cannot or should not apply to imports of subject merchandise from China, and Plaintiff is not seeking to avoid paying lawful duties on applicable imports. Rather we are seeking to avoid having to pay this high cash deposit rate on shipments that are properly *not subject* to the scope of the underlying AD/CVD orders.

its response does not claim otherwise (rather, it simply argues that the aim of "effective enforcement of the trade laws outweighs any private interest"). Gov't Response at 30.

Second, the Court in *ICON* also found that the risk of erroneous deprivation was high. *ICON I* at *13. The Government again does not meaningfully contest this factor. *See* Gov't Response at 33. Indeed, the Government cannot reasonably claim that the risk of erroneous deprivation is anything but high. Vexas Corp.'s submissions confirm that the imports at issue consist of either **[**

**]**. *See* Prelim. Injunction Motion and TRO and accompanying Exhibit 4 CF-28 Response, ECF No. 7.4 (Aug. 31, 2026). Moreover, as we understand the interim measures, CBP would be empowered to demand 519.23 percent AD/CVD duties on any and all imports by Vexas Corp. – if, for example, Vexas Corp. were to import a golf cart steering wheel manufactured in Canada, CBP could impose 519.23 percent AD/CVD duties (duties that legally only apply to golf carts and major subassemblies produced in China). In our view, there is not a "risk" of erroneous deprivation; the interim measures are by definition all encompassing, sweeping in any and all imports. The interim measures in this sense are designed to cause erroneous deprivation.

Third, the Court found the Government interest to be "low." The Government again does not meaningfully advance an argument to the contrary, instead pointing to general government interest in a robust enforcement regime. Gov't Response at 30-33. On balance, just like in *ICON I*, the *Mathews* factors all point towards a likelihood of success on the merits.

### B. Irreparable Harm

As an initial matter, because nearly a month has passed since we first detailed the irreparable harm Vexas Corp. is likely to suffer, at **Exhibit 1** we provide an updated declaration

from co-CEOs Mark Messick and Sanjay Kopay detailing the imminent and irreparable harm they and their company stand to suffer if the interim measures are imposed. Consistent with their prior statement, at bottom, if these duties are imposed Vexas Corp. will be forced to cease importing, would face significant retroactive duties dating back to August 18, 2026, and would shortly run out of inventory.[3] Without inventory, the company cannot make additional sales, which are necessary for the company's continued operation. In other words, without a steady flow of imports of Vietnamese-origin parts, Vexas Corp. cannot manufacture golf carts at its facility in South Carolina. Within weeks, Vexas Corp. would need to wind down its operations, forcing it to lay off its approximately **[ ]**. **Exhibit 1** at ¶ 8. This would essentially push the company into bankruptcy in short order. If the company were to prevail in the EAPA investigation, a process that (as the Government acknowledges) will take many months, the company would no longer exist and cannot simply flip a switch and resume operations. At that point, its manufacturing capacity would be non-existent, its supply chain through Vietnam dissolved, and its employees and production capacity gone.

The Government tries to downplay this impending and irreparable harm by claiming that "none of the plaintiffs has put forward any evidence that they will file for bankruptcy or that they have taken any concrete steps to do so." Gov't Response at 38. In making this claim the Government is essentially arguing that the Plaintiffs need to first actually suffer the irreparable harm before the harm can be enjoined. The Government also argues that Plaintiffs "can safely avoid payment of cash deposits entirely by simply ceasing to import covered merchandise by means of suspected evasion until the EAPA investigation concludes." Gov't Response at 39.

[3] We acknowledge the Government's indication that it would only seek cash deposits back to August 18, 2026, rather than back to the date of initiation. Gov't Response at 31. Thus, we have focused on the immediate financial impact going forward as well as back to August 18.

This is frankly a remarkable claim. The Government is essentially saying that the harm is wholly avoidable so long as the companies simply stop importing – the very key to Vexas Corp.'s survival. This catch-22 entirely misses the point. The fundamental harm Vexas Corp. is on the verge of suffering *is the cessation of imports*. If Vexas Corp. ceases to import it will shut down in in a matter of weeks. Vexas Corp. also stresses that it *is not* importing "evading" merchandise. Its on-going imports are not subject to the scope of these investigations, notwithstanding CBP's "suspicion" to the contrary. To be clear, Vexas Corp. is not standing before the Court asking it to sanction the importation of merchandise that is within the scope of the AD/CVD cases without payment of appropriate cash deposits; we are fully confident that CBP will ultimately agree that the shipments at issue did not evade the AD/CVD orders. Rather, Vexas Corp. is here today seeking judicial pause of the Government's erroneous collection of duties on merchandise that should not be and is not subject to the duties at issue. In other words, we are merely asking the Court to allow Vexas Corp. to remain in business long enough to survive this EAPA investigation.

**C. The Balance of the Equities and Public Interest Favor Vexas Corp.**

The balance of the equities and the public interest (factors that merge when the government is the defendant) likewise favor Vexas Corp. Indeed, under virtually identical circumstances, this Court found in *ICON* that the balance of equities and public interest favor importers. *ICON I* at *16-17. The Government does not refute these similarities in its response. Gov't Response at 39-41. Rather, the Government argues that CBP has a "legitimate interest in protecting the revenue." *Id*. That is true enough; however, Vexas Corp. is not attempting to bypass or evade paying legitimate duties on its imports. Rather, it is fighting to stay in business long enough to prove that its imports are not subject to the AD/CVD orders.

The Government further points to the statutory purpose and history of EAPA, arguing that granting Vexas Corp.'s temporary restraining order or preliminary injunction would frustrate EAPA's "statutory command." *Id*. at 40-41. This Court considered whether a substantially similar injunction would frustrate EAPA's statutory purpose in *ICON*, and rightfully concluded that it would not because the Plaintiff sought only to enjoin the Government from imposing interim measures without a fair hearing. *ICON* I at *17. Thus, the Government's interest "is narrower than the government represents." *Id*. Moreover, the "Constitution… does not permit {the government} to prioritize any policy goal over the Due Process Clause." *Id*. (citing *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020)). Because Vexas Corp. is likely to succeed on the merits of its due process claim, the public interest and balance of equities favor Vexas Corp.

## III. Reply to Defendant-Intervenor's Response in Opposition to Vexas Corp.'s Motion for a Temporary Restraining Order and Preliminary Injunction

Vexas Corp. acknowledges that Defendant-Intervenor American Personal Transportation Vehicle Manufacturers Coalition also submitted a response in opposition to its motion for a temporary restraining order and preliminary injunction. *See* Defendant-Intervenor American Personal Transportation Vehicle Manufacturers Coalition's Consolidated Response In Opposition to Plaintiffs' Motions for a Temporary Restraining Order and Preliminary Injunction, ECF No. 34 (Sept. 18, 2026) ("Def.-Int. Response") at 5-57. Defendant-Intervenor's response does not advance any materially distinct arguments from those advanced by the Government. *See* Def.-Int. Response at 5-18. Moreover, we understand that, consistent with the Court's decision in *ICON III*, the Court will only be allowing Defendant-Intervenor limited intervention status solely with respect to Count 3 of our complaint (related to the sufficiency of the evidence to support CBP's "reasonable suspicion" determination).

Defendant-Intervenor's response goes far beyond responding to this single count; the Court should limit its review of their response solely to issues related to this single count, which we believe is not necessary for the Court to rule on the preliminary injunction motion. In short, Defendant-Intervenor's Response is not relevant to the injunction determination before the Court, and to the extent their arguments are germane to the issue at hand they are duplicative of those raised by the Government and Vexas Corp. refers the Court to the arguments in Sections I and II of this brief as responsive to Defendant-Intervenor's duplicative claims.

**CONCLUSION**

For these reasons, the Court should grant Vexas Corp.'s motion and enjoin the interim measures.

/s/ Henry D. Almond
Henry D. Almond
David J. Park
Lynn Fischer Fox
Kang Woo Lee
Archana Rao P. Vasa
Sally Alghazali
Jennifer "Ellie" Farrin

*Counsel to Vexas Corporation d/b/a Atlas*

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 942-5000
Fax: (202) 942-5999
E-mail: Henry.Almond@arnoldporter.com

**Dated: September 25, 2026**

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing submission complies with the word-limitation set forth in Standard Chambers Procedure 2(B)(1), and contains 4,241 words.

Dated: September 25, 2026

/s/Henry D. Almond