**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **BINTELLI LLC, VENOM MOTORSPORTS, LLC, and VEXAS LSV, LLC,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES; U.S. CUSTOMS AND BORDER PROTECTION; and ERIC CHOY, in his official capacity as Executive Director, Trade Remedy Law Enforcement Directorate, Office of Trade, U.S. Customs and Border Protection,**<br><br>**Defendants,**<br><br>**and**<br><br>**AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION,**<br><br>**Defendant-Intervenor.** | **Before: Hon. Leo M. Gordon, Senior Judge**<br><br>**Consol. Court No. 26-03809 (Lead)**<br><br>**[Consol. with Nos. 26-03812, 26-03824]** |

**DEFENDANT-INTERVENOR AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION'S OPPOSITION TO PLAINTIFFS' BINTELLI, LLC'S AND VENOM EV LLC'S MOTION TO STRIKE**

## INTRODUCTION

Plaintiffs' Motion to Strike seeks an extraordinary remedy for what is, at most, an ordinary merits dispute. The Court granted Plaintiffs an opportunity to rebut the substance of Defendant-Intervenor's Opposition in a reply brief. Plaintiffs' disagreement with Defendant-Intervenor's responses does not make them improper and provides no basis to strike a filing the Court authorized. In their effort to cast Defendant-Intervenor's opposition as improper, Plaintiffs' motion repeatedly mischaracterizes the Court's *ICON* decisions and Defendant-Intervenor's briefing. Most notably, Plaintiffs attempt to transform observations made in *ICON* while resolving preliminary-injunction and jurisdictional questions into a definitive ruling on the scope of the antidumping and countervailing duty orders ("AD/CVD"). The Court did no such thing.

At bottom, this is a dispute over the parties' competing accounts of how the case arrived at this point, the significance of Plaintiffs' admitted import practices, and the legal effect of *ICON*. That is ordinary litigation.[1] Defendant-Intervenor was permitted to oppose Plaintiffs' motions and responded to arguments Plaintiffs themselves placed before the Court. When Defendant-Intervenor filed its Opposition, the Court had not yet resolved the precise scope of its participation. The consolidated filing avoided duplicative briefing, and the handling of confidential material reflected the parties' unresolved dispute concerning the Protective Order. Plaintiffs identify no bad faith, flagrant violation, or concrete prejudice. In any event, the Court is fully capable of determining which arguments fall within the scope of Defendant-Intervenor's permitted participation and disregarding any material it concludes falls outside that scope. Striking the Opposition is therefore neither necessary nor warranted.

The Motion should be denied.

## ARGUMENT

### I. STANDARD OF REVIEW

Motions to strike are "'generally disfavored' and are considered 'extraordinary remedies.'" *Hynix Semiconductor, Inc. v. United States*, 27 C.I.T. 1469, 1470 (2003) (quoting *Hynix Semiconductor, Inc. v. United States*, No. 01–00988, 2002 Ct. Intl. Trade LEXIS 116, at *3 (Ct. Int'l Trade Sept. 30, 2002)). Courts have "broad discretion in evaluating motions to strike and may grant such a motion 'where there has been a flagrant disregard of'" the Court's rules. *Hynix Semiconductor*, 27 C.I.T. at 1470 (2003). Courts should deny motions to strike "unless a brief

---

[1] *See United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) (quoting *Greenlaw v. United States*, 554 U.S. 237, 386 (2008) (Scalia, J., concurring in part and concurring in judgment) ("In our adversarial system of adjudication, we follow the principle of party presentation. … But as a general rule, our system 'is designed around the premise that {parties represented by competent counsel} know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.' ").

demonstrates a lack of good faith, or that the court would be prejudiced or misled by the inclusion" of "improper material." *Florida Tomato Exchange v. United States*, 973 F. Supp. 2d 1334, 1337-38 (Ct. Int'l Trade 2014) (quoting *Hynix Semiconductor*, 27 C.I.T. at 1470).

In addition, "there is no occasion for a party to move to strike portions of an opponent's brief (unless they be scandalous or defamatory) merely because he thinks they contain material that is incorrect, inappropriate, or not a part of the record." *Hynix*, 27 C.I.T. at 1470 (quoting *Acciai Speciali Terni S.P.A. v. United States*, 120 F. Supp. 2d 1101, 1106 (Ct. Int'l Trade 2000)). "The proper method of raising those issues is by so arguing, either in the brief or in a supplemental memorandum, but not by filing a motion to strike." *Id.*

## II. PLAINTIFFS SEEK TO STRIKE ARGUMENTS THEY DISAGREE WITH, NOT IMPROPER MATERIAL.

### A. Defendant-Intervenor Responded to the Arguments Plaintiffs Placed Before the Court.

Defendant-Intervenor's Opposition properly addressed the issues Plaintiffs themselves raised. Plaintiffs placed the Orders, their separate shipments, their post-duty supply-chain changes, and CBP's reasonable-suspicion determination at the center of their preliminary-injunction motions. *See* Pl.'s Mot. for a TRO & Prelim. Inj. at 3–10, 19–20 (Aug. 31, 2026) ("Bintelli Br."), ECF No. 27; Pls.' Am. Mot. for a TRO & Prelim. Inj. at 3–10, 19–21 (Sep. 8, 2026) ("Venom Br."), ECF No. 30. Defendant-Intervenor simply responded to those arguments. It explained why Plaintiffs' import practices support CBP's reasonable-suspicion finding, why Plaintiffs' reading of the Orders is wrong, and why Plaintiffs' scope theory should not be used to obtain emergency relief in this posture. *See* Coalition's Consol. Resp. in Opp. to Pls.' Mots. For a TRO and Prelim. Inj. at 2, 6–14, 37–40 (Sep. 18, 2026) ("Coalition Opp."), ECF No. 34. This response fell squarely within the ordinary purpose of an opposition brief. *See Florida Tomato*, 973 F. Supp. 2d at 1338

(quoting *Hynix*, 27 C.I.T. at 1471) ("A party is free, however, 'to offer whatever legal arguments it chooses.' ").

Plaintiffs' motion confirms the point. Their asserted grounds for striking the Opposition are that Defendant-Intervenor misread *ICON*, misstated the Orders, and drew the wrong conclusions from Plaintiffs' conduct. Those are merits disagreements. The Court is fully capable of evaluating the competing positions and assigning each argument the weight it deserves. *See Acciai Speciali Terni*, 24 C.I.T. at 1217, 120 F. Supp. 2d at 1107 ("The court can deal with Plaintiff's arguments on their merits…").

**B. *ICON* Did Not Resolve the Scope Question Presented Here.**

Plaintiffs' claim that the Court resolved the parties' dispute regarding the scope of the AD/CVD Orders in ICON is false, and their representation to the contrary creates a materially misleading impression of what the Court actually decided. *See Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1356 (Fed. Cir. 2003) (explaining that counsel misrepresented existing law by omitting material language from judicial authorities and thereby creating a false and misleading impression of what those authorities held). *ICON* did not decide scope. That issue has not been fully briefed, presented, or resolved at the preliminary-injunction or jurisdictional stage; indeed, merits briefing on that very issue is currently underway in *ICON*. *See* Order Granting Mot. to Amend Sched. Order, *ICON EV LLC v. United States*, Court No. 26-02759, ECF No. 57 (June 29, 2026) (setting September 21, 2026 deadline for ICON's motion for judgment on the agency record and October 23, 2026 deadline for defendants' response).

Similarly, Plaintiffs' own opening briefs confirm the point. In their briefs, Plaintiffs do not argue that *ICON* decided the scope issue in their favor. Rather, they argued that the agency's position rested on a "garbled interpretation of the 'precise and limited scope'" of the Orders that the *ICON* court had found "facially deficient" at the preliminary-injunction stage. *See* Bintelli Br. at 1 (quoting *ICON EV LLC v. United States*, Court No. 26-02759, Slip Op. 26-42 (Ct. Int'l Trade Apr. 24, 2026) ("ICON

Slip Op. 26-42")); Venom Br. at 1 (quoting ICON Slip Op. 26-42). That is a materially different proposition. Plaintiffs' current effort to recast *ICON* as a definitive scope ruling cannot be reconciled with the *ICON* opinions or with Plaintiffs' own prior characterization of those opinions.

Indeed, the *ICON* opinions themselves make Plaintiffs' overread untenable. The April 24 order expressly cautioned that findings and conclusions made at that stage are not binding. ICON Slip Op. 26-42 at 2 n.1 (citing *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)) ("The findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding.").

Critically, even at the preliminary stage, the Court did not purport to construe the Orders definitively. The Court quoted the Orders while evaluating the adequacy of CBP's explanation and the risk of erroneous deprivation, and it held only that "{t}he government has failed to adequately explain why the LSPTV Orders would cover ICON's separately shipped parts." *Id.* at 12–13. That conclusion addressed the explanation then before the Court; it did not decide whether Chinese-origin frames, suspension systems, motors, or other components imported and later assembled into LSPTVs fall within the Orders, nor did it decide how the certification requirement applies to such merchandise.

The May 26 jurisdiction opinion does not change that. The issue there was whether ICON's challenge to EAPA interim measures was final and ripe and whether the Court could exercise jurisdiction under 28 U.S.C. § 1581(i). *See ICON EV LLC v. United States*, Court No. 26-02759, Slip Op. 26-55, at 1–2, 5–13 (Ct. Int'l Trade May 26, 2026). The Court denied the government's motion to dismiss for lack of subject-matter jurisdiction. *Id.* at 13. It did not adjudicate scope or hold that ICON's merchandise fell outside the Orders. *Id.* at 4 n.6; *see also Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1370 (Fed. Cir. 2021) ("A court's jurisdiction and a claim's merits are generally distinct inquiries."). That distinction matters because the disagreement here is over

what the scope means and how it applies to Plaintiffs' admitted import practices, not whether it is "precise and limited." Plaintiffs do not even rely on ICON in their opening briefs when they discuss their position on scope; rather, they cite the Orders, *see, e.g.*, Venom Br. at 3–4; Bintelli Br. at 3–4. To suggest Defendant-Intervenor somehow hid the ball by also relying on the same Orders to explain its competing interpretation, *see* Coalition Opp. at 8-11, is absurd. A merits disagreement over the Orders' meaning is not misconduct and does not warrant striking a brief. *See Florida Tomato*, 973 F. Supp. 2d at 1338 ("A party is free, however, 'to offer whatever legal arguments it chooses.'").

Nor did Defendant-Intervenor ignore *ICON*. The Opposition addressed *ICON* in the factual background and then returned to it wherever Plaintiffs relied on those decisions—jurisdiction, final agency action, protected property interests, irreparable harm, and the scope-related reasonable-suspicion arguments. *See* Coalition Opp. at 17–18, 19–25, 25–28, 29–40, 41–45, 52–54. Plaintiffs may disagree with Defendant-Intervenor's distinctions, but they cannot fairly claim that Defendant-Intervenor concealed or failed to engage with *ICON*. Their accusation rests on an effort to turn ICON into something it is not and never can be: a final scope decision on the merits.

### C. <u>Defendant-Intervenor's Scope-Procedure Argument Provides No Basis To Strike the Opposition.</u>

Plaintiffs' disagreement with Defendant-Intervenor's discussion of Commerce's scope-ruling process likewise does not render the Opposition improper. Plaintiffs placed at issue whether their separately shipped frames, suspension systems, motors, and other components were covered by the Orders. Defendant-Intervenor responded that Commerce has primary authority to interpret its own orders, that an importer disputing Customs' application of an AD/CVD order ordinarily may seek a Commerce scope ruling subject to review under 28 U.S.C. § 1581(c), and that Plaintiffs chose not to do so. *See Sunpreme Inc. v. United States*, 892 F.3d 1186, 1192–93 (Fed. Cir. 2018) ("{Plaintiff} has circumvented the established administrative procedure for determining the scope

of an antidumping or countervailing duty order."); *see also Notice of Scope Ruling Applications Filed in Antidumping and Countervailing Duty Proceedings*, 91 Fed. Reg. 10,078 (Dep't Commerce Mar. 2, 2026). Commerce's Final Scope Decision Memorandum reinforces why that argument was responsive: Commerce adopted a certification regime precisely because it was concerned that LSPTVs could be broken down in China into parts and components, shipped to the United States through different importers, ports, or entries, and reassembled to produce LSPTVs. *See* Memorandum from Jerry Xiao and Gordon Struck, Int'l Trade Compliance Analysts, Off. II, AD/CVD Operations, to Scot Fullerton, Acting Deputy Assistant Sec'y for AD/CVD Operations, re: *Less-Than-Fair-Value and Countervailing Duty Investigations of Certain Low Speed Personal Transportation Vehicles from the People's Republic of China: Final Scope Decision Memorandum* (June 16, 2025) ("Final Scope Decision Memorandum") at 5–6, ECF No. 34-8; Coalition Opp. at 9-10. Commerce further identified certain Chinese-origin components—seat assemblies, steering columns, suspension systems, plastic cowlings, and electric and gas-powered motors—as the parts most likely to be used to circumvent the Orders. *Id.* at 6; *Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China*, 90 Fed. Reg. 38,759, 38,763 (Dep't Commerce Aug. 12, 2025) (amended final antidumping duty deter. and antidumping duty order; amended final deter. of countervailing duty investigation and countervailing duty order) (the "Orders"). These are the same type of scope issues Plaintiffs brought into this case.

The Court need not resolve the scope question to deny Plaintiffs' Motion to Strike. It need only conclude that Defendant-Intervenor was entitled to address it. Plaintiffs' position would require the Court to strike a responsive legal argument because Plaintiffs believe *ICON* already forecloses it. But *ICON* did not decide scope; Commerce expressly interpreted the scope and certification concerns that underlie its own Orders, and Defendant-Intervenor was entitled to rely on those materials to explain why Plaintiffs' merits theory is not a basis for emergency relief. *See*

Final Scope Decision Memorandum 5–6; *Meridian Products, LLC v. United States*, 890 F.3d 1272, 1278–79 (Fed. Cir. 2018) (rejecting the CIT's attempt to substitute its judgment for Commerce's interpretation of an order); *King Supply Co., LLC v. United States*, 674 F.3d 1343, 1348–49 (Fed. Cir. 2012) (recognizing that Commerce's interpretation of its own order is entitled to substantial deference). Plaintiffs may respond on the merits. They may not convert that disagreement into a motion to strike.

## III. PLAINTIFFS IDENTIFY NO RULE VIOLATION OR PREJUDICE.

Plaintiffs' procedural objections do not justify striking the Opposition. First, the Court permitted Defendant-Intervenor to file an opposition. When the opposition came due, the Court had not yet ruled on Defendant-Intervenor's motion to intervene. The filing therefore addressed the issues Plaintiffs raised in their preliminary-injunction papers. To the extent Plaintiffs contend that particular arguments exceed the scope of the Court's later intervention order, the Court can simply disregard any material it concludes falls outside that order. That is not a basis to strike the Opposition. *See Acciai Speciali Terni S.p.A.*, 24 C.I.T. at 1217, 120 F. Supp. 2d at 1107 ("The court can deal with Plaintiff's arguments on their merits, and if they are indeed unsupported by the administrative record, then those arguments will have no weight.").

Second, Defendant-Intervenor did not attempt to evade an applicable word limit. Based on its express reference to motions for judgment on the agency record and repeated references to USCIT Rule 56.2, which governs such motions in cases brought under 28 U.S.C. § 1581(c)—the jurisdictional provision Plaintiffs contend is manifestly inadequate here—Defendant-Intervenor understood Section 2 of the Court's Chambers Procedures to be limited to motions for judgment on the agency record and related merits briefs. *See* Judge Gordon's Standard Chambers Procedures § 2. Section 3 of the Court's Chambers' Procedures, which governs "pleadings, motions, and other papers," does not impose any word limitations.

Further, Defendant-Intervenor submitted one consolidated opposition to three motions rather than burdening the Court with three substantially overlapping briefs. That choice promoted judicial economy, not disregard of the Court's rules. Even if Plaintiffs read the chambers procedure differently, a good-faith interpretive disagreement does not constitute the "flagrant disregard" required to strike a filing. Nor do Plaintiffs identify any resulting prejudice. *See Diamond Sawblades Mfrs. Coal. v. United States*, 31 C.I.T. 1249, 1252 (2007) (denying motion to strike where excess pages did not reflect "flagrant disregard" or cause prejudice).

Third, Plaintiffs' characterization of the circumstances surrounding their receipt of Defendant-Intervenor's confidential Opposition is unfair. The question of how the Coalition is to be treated under the existing Protective Order has been a subject of much debate, including during the Court's scheduling hearings. The Coalition is named in the Protective Order, which contains no restrictions on its ability to access confidential information, but Plaintiffs, with the Court's permission, did not follow the terms of the Protective Order. Rather, they withheld confidential versions of their briefs from the Coalition because the Court had not resolved the Coalition's motion to intervene. As such, the Coalition understood the Protective Order to be provisional as to the Coalition until its motion to intervene was resolved. When the Coalition filed its opposition, its motion to intervene remained pending. As a result of that, the Coalition understood itself to be outside the scope of the Protective Order, an understanding that was supported by the fact that the Coalition did not have permission to file documents under seal in the case. The Coalition thus filed a public version of its papers, served a confidential version on the Court via secure transfer, and, on the Tuesday following the filing, reached out to the Court for guidance on how to share its submission with the parties without risking disclosure of its or other parties' confidential information.

On Wednesday afternoon, the Court advised the Coalition to file a motion to amend the existing Protective Order. The Coalition thus prepared a draft motion to amend the Protective Order and circulated it to the parties for comments. The Coalition's draft proposed minor alterations to the existing, agreed-upon Protective Order that clarified that the Coalition should be treated as a party for purposes of the protective order during the pendency of the Court's consideration of the intervention issue. Bintelli and Venom responded that they would not oppose the Coalition filing its briefs under the Protective Order, but would not consent to the Coalition's suggested revisions, which would have treated the Coalition like any other party and allowed parties to share confidential information on a reciprocal basis (at least on a going-forward basis, there was no provision in the draft contemplating service of previously-filed papers, only the same statement that all parties would be permitted to have access to confidential materials). The Coalition and Plaintiff Vexas conferred via email but did not reach the point of exchanging formal positions as it became clear that the Coalition and Plaintiffs Bintelli and Venom were unlikely to reach agreement on a path forward without a decision on intervention.

As a putative-intervenor, the Coalition was required to file its papers without full access to the Plaintiffs' briefs. Without modifying the Protective Order, Plaintiffs were in the same position that the Coalition was in. The Coalition offered a solution to Plaintiffs that it believed was fair—a reciprocal agreement essentially following the Protective Order's terms—but it was not acceptable to the Plaintiffs. Absent agreement, the Coalition elected not to file a motion to amend the Protective Order and to await clarity from the Court on intervention.

On Friday, September 25th, the Court provided clarity regarding intervention during its 11 am hearing. Following the hearing, Defendant-Intervenor emailed Plaintiffs at 1:54 p.m. with a revised proposed Protective Order that acknowledges the Coalition's status as a Defendant-Intervenor and clarifies which documents it should be permitted to access, specifically carving out

"irreparable harm" evidence Plaintiffs filed with their opening briefs (to the extent the Coalition is able to identify those documents without accessing them). Plaintiffs did not acknowledge or respond to the Coalition's email before filing their motion to strike, choosing instead to accuse the Coalition of impropriety for doing exactly what Plaintiffs did: serving a redacted version of its brief. Plaintiffs identify no concrete prejudice resulting from that approach, and the circumstances surrounding service provide no basis to strike Defendant-Intervenor's substantive arguments.

Plaintiffs devote considerable effort to explaining why they believe Defendant-Intervenor's arguments are wrong. Even if Plaintiffs were correct, that would not justify striking the Opposition. This Court has repeatedly recognized that disputes over the correctness, relevance, and weight of an opponent's arguments should be addressed through responsive briefing, not motions to strike. *See e.g., Acciai Speciali Terni*, 24 C.I.T. at 1217, 120 F. Supp. 2d at 1106 ("The proper method of raising those issues is by so arguing, either in the brief or in a supplemental memorandum, but not by filing a motion to strike."). Plaintiffs' filing itself presents a reply in the alternative, demonstrating that their merits disagreements can be addressed through responsive briefing rather than by striking the Opposition.

The Motion to Strike should be denied.

**Ct. No. 26-03809**

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Strike.

Respectfully submitted,

*/s/ Derick G. Holt*
Robert E. DeFrancesco, III, Esq.
Derick G. Holt, Esq.
Theodore P. Brackemyre, Esq.
Rebecca J. Fiebig, Esq.
Joel S. Nolette, Esq.
Kahlil H. Epps, Esq. (*pending admission*)

**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-7000

*Counsel to Defendant-Intervenor the American Personal Transportation Vehicle Manufacturers Coalition*

Dated: October 2, 2026