**UNITED STATES COURT OF INTERNATIONAL TRADE**

VEXAS CORP. d/b/a ATLAS,

*Plaintiff,*

BINTELLI, LLC, and VENOM EV, LLC,

*Consolidated Plaintiffs,*

v.

UNITED STATES, *et al.*,

*Defendants,*

AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION,

*Defendant-Intervenor.*

Before: Jane A. Restani, Timothy C. Stanceu, and Leo M. Gordon, Judges

Consol. Court No. 26-03809-3JP

NON-CONFIDENTIAL VERSION

**PLAINTIFF VEXAS CORP.'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Henry D. Almond
David J. Park
Lynn Fischer Fox
Kang Woo Lee
Archana Rao P. Vasa
Jennifer "Ellie" Farrin

*Counsel to Vexas Corporation d/b/a Atlas*

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 942-5000
Fax: (202) 942-5999
E-mail: Henry.Almond@arnoldporter.com

**Dated: November 24, 2026**

# TABLE OF CONTENTS

Page

RULE 56.1(c)(1) STATEMENT ....................2

BACKGROUND ....................3

I. Vexas Corp. Manufactures Electric Golf Carts in South Carolina From Vietnamese Chassis and Other Inputs, Which are Not Subject to the Department of Commerce's AD/CVD Order on LSPTVs. ....................3

II. At the Behest of a Competitor, CBP Imposes Interim Measures on Vexas Corp. Amounting to Sanctions Without Notice or Opportunity to be Heard. ....................6

III. Facing Immediate Closure, Vexas Corp. Seeks Relief from this Court. ....................9

SUMMARY OF ARGUMENT ....................9

ARGUMENT ....................11

I. Standard of Review ....................11

II. CBP Failed to Provide Vexas Corp. Pre-Deprivation Notice or a Meaningful Opportunity to Be Heard, in Violation of the Fifth Amendment ....................12

A. The private interest at stake is concrete and substantial. ....................13

B. The high risk of erroneous deprivation necessitates notice and a meaningful opportunity to be heard. ....................15

C. The public interest supports requiring notice and an opportunity to be heard before interim measures are imposed. ....................17

III. The Reasonable Suspicion Standard, as Applied, Sets an Unconstitutionally Low Bar for the Imposition of the Challenged Interim Measures. ....................18

IV. Even if the Reasonable Suspicion Standard Passed Constitutional Muster As-Applied, CBP Lacked the Reasonable Suspicion Necessary to Impose the Challenged Interim Measures. ....................22

A. CBP misconstrued the scope of the LSPTV Orders. ....................24

B. The seven challenged entries do not support reasonable suspicion. ....................25

C. Vexas Corp.'s CF-28 response demonstrates compliance, not evasion. ....................27

D. CBP lacked reasonable suspicion that the entries subject to the interim measures contain covered merchandise. ....................28

V. The Court Should Issue Permanent Injunctive and Declaratory Relief ....................29

CONCLUSION ....................30

# TABLE OF AUTHORITIES

**Cases**

*Addington v. Texas*, 441 U.S. 418 (1979) .......... 19, 20

*Am. Pac. Plywood, Inc. v. United States*, 2023 WL 4288346 (Ct. Int'l Trade June 22, 2023) .......... 15, 20 n.2

*Aspects Furniture Int'l, Inc. v. United States*, 607 F. Supp. 3d 1246 (Ct. Int'l Trade 2022) .......... 15

*Butz v. Economou*, 438 U.S. 478 (1978) .......... 18

*CEK Grp. LLC v. United States*, 633 F. Supp. 3d 1369 (Ct. Int'l Trade 2023) .......... 21, 23

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) .......... 14, 18, 22

*Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) .......... 14

*Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975) .......... 16

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) .......... 30

*F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232 (1980) .......... 22

*ICON EV LLC v. United States*, 836 F. Supp. 3d 1361, Slip Op. 26-42 (Ct. Int'l Trade Apr. 24, 2026) ("*ICON I*") .......... passim

*ICON EV LLC v. United States*, Slip Op. 26-55, 2026 WL 1470148 (Ct. Int'l Trade May 26, 2026) ("*ICON II*") .......... 12, 14

*ICON EV LLC v. United States*, Slip Op. 26-88, 2026 WL 2295795 (Ct. Int'l Trade Aug. 10, 2026) ("*ICON III*") .......... 21-22

*Kashem v. Barr*, 941 F.3d 358 (9th Cir. 2019) .......... 21

*Mathews v. Eldridge*, 424 U.S. 319 (1976) .......... passim

*Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978) .......... 15

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) .......... 13, 22

*Ninestar Corp. v. United States*, 687 F. Supp. 3d 1308 (Ct. Int'l Trade 2024) .......... 23 n.3

*Phoenix Metal Co. v. United States*, Slip Op. 24-68, 2024 WL 2891503 (Ct. Int'l Trade June 10, 2024) .......... 14, 15, 21

*Rodriguez v. Dep't of Veterans Affs.*, 8 F.4th 1290 (Fed. Cir. 2021) .......... 19, 23 n.3

*Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023) .......... 14, 23 n.3

*Sabey v. Butterfield*, 823 F. Supp. 3d 113 (D. Mass. 2026)....21

*Santosky v. Kramer*, 455 U.S. 745 (1982)....19, 20

*Sgro v. United States*, 287 U.S. 206 (1932)....17, 27

*Steffel v. Thompson*, 415 U.S. 452 (1974)....31

*Superior Commercial Solutions, LLC v. United States*, 811 F. Supp. 3d 1363 (Ct. Int'l Trade 2025)....2, 13, 14, 19

*Tate v. Short*, 401 U.S. 395 (1971)....21

*Terry v. Ohio*, 392 U.S. 1 (1968)....20, 23

*Ulstein Maritime, Ltd. v. United States*, 833 F.2d 1052 (1st Cir. 1987)....31

*United States v. All Assets of Statewide Auto Parts, Inc.*, 971 F.2d 896 (2d Cir. 1992)....15

*United States v. Jones*, 619 F.2d 494 (5th Cir. 1980)....17, 27

*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994)....22

*Vitek v. Jones*, 445 U.S. 480 (1980)....20

*Women's Med. Pro. Corp. v. Baird*, 438 F.3d 595 (6th Cir. 2006)....15

*Woodby v. INS*, 385 U.S. 276 (1966)....19

**Statutes**

5 U.S.C. § 706(2)....12

19 U.S.C. § 1504(b)....9

19 U.S.C. § 1517....18

19 U.S.C. § 1517(a)(3)....29

19 U.S.C. § 1517(b)(1)....21

19 U.S.C. § 1517(b)(4)....23, 26

19 U.S.C. § 1517(c)(1)(A)....23 n.3

19 U.S.C. § 1517(e)....11, 20

19 U.S.C. § 1517(e)(3)....3, 17, 29, 31

19 U.S.C. § 1623....9

19 U.S.C. § 1677j....23, 26

28 U.S.C. § 1581(i)(1)(D) .......... 12

28 U.S.C. § 2640(e) .......... 12

28 U.S.C. § 2643(c)(1) .......... 30

**Regulations**

19 C.F.R. § 165.1 .......... 26

**Administrative Materials**

*Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Initiation of Less-Than-Fair-Value Investigation*, 89 Fed. Reg. 57,865 (Dep't Commerce July 16, 2024) .......... 25

*Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order; Amended Final Determination of Countervailing Duty Investigation and Countervailing Duty Order*, 90 Fed. Reg. 38,759 (Dep't Com. Aug. 12, 2025) .......... 4, 5, 24, 25

**PLAINTIFF VEXAS CORP.'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

As we demonstrate below, U.S. Customs and Border Protection ("CBP") violated Vexas Corp. d/b/a Atlas's ("Vexas Corp" or "Vexas") Fifth Amendment due process rights, and violated the Enforce and Protect Act ("EAPA") itself, by imposing certain "interim measures" against Vexas. These discretionary interim measures would require Atlas Carts to pay antidumping and countervailing duty cash deposits at a combined rate of 519.23 percent on its imports, and to make "live" entry of every shipment. CBP imposed these measures based only on a purported reasonable suspicion" of antidumping and countervailing duty evasion, and without any prior notice or any opportunity to be heard. Moreover, CBP's "reasonable suspicion" hinged on stale information about materially different imports and on a response to a request for information (generally referred to as a "CF-28," or "Customs Form 28" response), submitted just twelve days before CBP announced the interim measures. The materials in that CF-28 response, rather than providing a basis to consider that evasion had taken place, or that there was a reasonable suspicion of such evasion, demonstrated Vexas's imported merchandise was not subject to the antidumping and countervailing duty orders as written.

The Court should grant judgment in Vexas Corp.'s favor. CBP's actions deprived Vexas of its right to due process under the Fifth Amendment. CBP imposed the interim measures without meeting the constitutional minimum of pre-deprivation notice or an opportunity to be heard, notwithstanding this Court's decisions in *Superior Commercial Solutions* and *ICON*. *See ICON EV LLC v. United States* 836 F. Supp. 3d 1361, 1370-71 (Ct. Int'l Trade 2026) ("*ICON I*") (finding that that procedural due process considerations do apply in an EAPA investigation context); *see also Superior Commercial Solutions, LLC v. United States*, 811 F. Supp. 3d 1363, 1376 (Ct. Int'l Trade 2025). Moreover, CBP imposed these measures under a reasonable

suspicion standard appropriate only for temporary, rather than final, deprivations. Additionally, separate and apart from these constitutional violations, CBP violated the EAPA statute by imposing interim measures without a factually-supported reasonable suspicion of evasion; the evidence CBP relied on to impose these existential measures either showed compliance with the orders, or concerned imports materially distinct from those affected by the interim measures.

For any of these reasons, Vexas is entitled to judgment. The Court should accordingly enter judgment in Vexas Corp.'s favor and issue declaratory and permanent injunctive relief.

**RULE 56.1(c)(1) STATEMENT**

1. The administrative determination to be reviewed is CBP's August 25, 2026 Notice of Initiation in EAPA Investigation No. 8286 ("CBP Initiation Notice"). C.R. 14, BC001286-310.

2. CBP denied Vexas due process by imposing interim measures under 19 U.S.C. §1517(e)(3) without notice or a meaningful opportunity to be heard. Additionally, the reasonable suspicion standard, as applied, violates Fifth Amendment due process because it sets too low of an evidentiary bar. Finally, CBP lacked reasonable suspicion of evasion sufficient to justify the interim measures, as it misconstrued the scope of the antidumping and countervailing duty orders, relied on stale evidence concerning materially different imports, and relied on a CF-28 response that, on its face, demonstrated that Vexas Corp.'s imports are not subject to the orders.

3. Vexas Corp. requests an order permanently enjoining the interim measures and declaring that Customs violated the law.

## BACKGROUND

### I. Vexas Corp. Manufactures Electric Golf Carts in South Carolina From Vietnamese Chassis and Other Inputs, Which are Not Subject to the Department of Commerce's AD/CVD Order on LSPTVs.

Vexas is a U.S.-based importer of record that imports certain models of electric golf carts and low speed personal transportation vehicles, in various states of assembly, as well as various parts and components for such vehicles. *See* Declaration of Sanjay Kopay and Mark Messick (Kopay & Messick Decl.) ¶ 2, ECF No. 7.1. Vexas has been in business since 2022 and employs nearly 50 personnel located primarily at its assembly plant in Williston, South Carolina. *Id.* ¶ 4.; C.R. 31, BC007964. The company maintains relationships with dealers nationwide who sell Vexas Corp.'s merchandise to U.S. consumers. Kopay & Messick Decl. ¶ 3.

In August 2025, the U.S. Department of Commerce issued an antidumping and countervailing duty order on low-speed personal transportation vehicles ("LSPTVs") from the People's Republic of China. *Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order; Amended Final Determination of Countervailing Duty Investigation and Countervailing Duty Order*, 90 Fed. Reg. 38,759 (Dep't Com. Aug. 12, 2025) ("the Orders"). The Orders cover finished LSPTVs of Chinese origin, as well as certain unfinished or unassembled LSPTVs of Chinese origin. The scope of these Orders, in relevant part, provides:

> The merchandise covered by these orders consists of certain low speed personal transportation vehicles (LSPTVs) and subassemblies thereof, whether finished or unfinished and whether assembled or unassembled, with or without tires, wheels, seats, steering columns and steering wheels, canopies, roofs, or batteries. LSPTVs meeting this description are generally open-air vehicles, *i.e.,* may have a permanent roof, may have a permanent windshield, and may be covered with temporary sides, with a minimum of four wheels, a steering wheel, a traditional side-by-side or in-line row seating arrangement ( *i.e.,* non-straddle), foot operated accelerator and brake pedals, and a gross vehicle weight of no greater than 5,500 pounds. Vehicles with a roof and four sides with doors and windows permanently integrated into the

> chassis at the time of production ( *e.g.,* the sides are welded to the chassis and roof) are not subject to the order.
>
> ….
>
> An unfinished and/or unassembled LSPTV subject to these orders covers at a minimum a subassembly, also known as a "rolling chassis," which is typically comprised of, but not limited to, a frame or body with front and/or rear suspension components (such as arms, springs, axles, spindles, and shafts) installed and powertrain components (including either an electric motor or a gas-powered internal combustion engine) installed or ready for installation.
>
> When imported together with a rolling chassis subject to these orders, other LSPTV components, such as batteries, bumpers, wheel and tire assemblies, cowlings, fenders, grills, kick plates, steering column and steering wheel assemblies, dash assembly, seat assemblies, pedal assemblies, brake assemblies, canopy or roof assemblies, temporary rain enclosures, windshields, mirrors, headlights, taillights, lighting systems, or storage—whether assembled or unassembled, whether as part of a kit or not, and whether or not accompanied by additional components—constitute part of an unfinished and/or unassembled LSPTV that is subject to these orders. The inclusion of other products, components, or assemblies not described here does not remove the product from the scope….
>
> LSPTVs and subassemblies subject to these orders include those that are produced in the subject country whether assembled with other components in the subject country or in a third country. Processing or completion of finished and unfinished LSPTVs and subassemblies either in the subject country or in a third country does not remove the product from the scope.

Orders, 90 Fed. Reg. at 38,763. Subject merchandise must therefore contain *at least* a Chinese-origin "subassembly, also known as a 'rolling chassis,' which is typically comprised of, but not limited to, a frame … with front and/or rear suspension components … installed and powertrain components … installed or ready for installation." *Id.*

The Orders do not cover Vexas Corp.'s merchandise. Vexas Corp.'s merchandise does not contain Chinese-origin rolling chassis. Compl. ¶ 24, Kopay & Messick Decl. ¶ 7, ECF Nos. 2, 7.1. The rolling chassis in Vexas Corp.'s imports are of Vietnamese origin. Kopay & Messick Decl. ¶ 7. The frames in Vexas Corp.'s merchandise and major metal structural components are produced in Vietnam. *Id.* Vexas Corp.'s remaining imports from China consist of loose or

spare parts, and chassis assemblies that are not "rolling chassis" because they lack the installed suspension and powertrain components the scope requires. Apart from the handful of early entries it voluntarily reclassified as subject, none of Vexas Corp.'s imports contains a Chinese-origin rolling chassis. Compl. ¶ 24, ECF No. 2.

Prior to being made aware of the EAPA investigation, Vexas worked openly with CBP regarding its imports and the application of the scope of the Orders to its imports. In early 2025, shortly after liquidation was first suspended, CBP informed Vexas that six of its entries from late 2024 and early 2025 might be within the scope of the then-pending investigations. *Id.* at ¶ 26. Vexas reviewed those entries and the published scope, agreed that they were subject, and in April and May 2025 amended its entry documentation, changing the six entries from type 01 (consumption) to type 03 (AD/CVD). Amended CBP Form 7501s, ECF No. 7.5. A seventh entry, which CBP also questioned in mid-2025, covered non-subject batteries and other components. Vexas explained as much; CBP indicated it would accept the explanation and never followed up, and Vexas understood the matter to be closed. CBP Correspondence ECF No. 7.6.

Then, in June 2026, CBP issued a CF-28 request for information covering five entries of Vexas Corp.'s merchandise. Compl. ¶ 27; ECF No. 2; CBP Initiation Notice at 15, C.R. 14, BC001300. The CF-28 sought standard entry and production documentation. It did not mention the antidumping and countervailing duty orders, any EAPA allegation, any EAPA investigation, or any contemplated interim measures. CF-28 Requests, C.R. 54, BC009826-37. Unbeknownst to Vexas, *CBP had already initiated an EAPA investigation* on May 20, 2026, weeks before it issued the CF-28. CBP Initiation Notice at 14, C.R. 14. Vexas provided a complete response on August 6, 2026. CF-28 Response, C.R. 31, BC007952-75, C.R. 34, BC008018-21. That

response detailed its supplier's production in Vietnam, including the Vietnamese-origin rolling chassis and other key materials, and showed that the China-origin items it did import were not subject rolling chassis. *Id.* (detailing Vietnamese production of the shipments at issue, including descriptions and photographs of the Vietnamese-origin golf carts in a partially-assembled condition and background information on Vexas Corp.'s Vietnamese suppliers, including the address and photographs of the facility).

**II. At the Behest of a Competitor, CBP Imposes Interim Measures on Vexas Corp. Amounting to Sanctions Without Notice or Opportunity to be Heard.**

Unbeknownst to Vexas, in the months prior to its CF-28 submission, CBP had initiated an EAPA investigation based on an April 20, 2026 allegation of evasion of the LSPTV orders by Vexas and other importers submitted by the American Personal Transportation Vehicle Manufacturers Coalition (the petitioner in the underlying investigations before Commerce, and referred to here as the "Coalition.") C.R. 5, BC000605. Specifically, the allegation **[**

**]**. C.R. 5, BC000606. Vexas knew nothing of the allegation. Kopay & Messick Decl. ¶¶ 10–12, ECF No. 7.1.

The allegation is bare-bones at best and does not support a finding of reasonable suspicion of evasion. The allegation identifies **[**

**]**. Its evidence relies first on **[**

**]**. C.R. 5,

BC000619-21. From that **[** **]** alone, the allegation concludes that **[** **]**." *Id.* at BC000618-19. The allegation **[** **]**.

The allegation's remaining evidence is circumstantial and outdated. It asserts that Vexas **[** **]** relying on **[** **]**. C.R. 5, BC000620; Ex. 5 at 45, BC000687. The only evidence of Vexas Corp.'s South Carolina manufacturing facility is **[** **]**. Ex. 5 at 45, BC000687. A photograph of finished carts taken some nineteen months before the allegation says nothing about whether later entries contain Chinese-origin rolling chassis. The allegation does not recount **[** **]**. Indeed, the research into Vexas is described as **[** **]**. Ex. 5 at 1, BC000643.

From this evidence, the Coalition concluded that **[** **]** *Id.* at BC000621. Despite a total lack of evidence showing that Vexas imported subject merchandise from China, CBP initiated an EAPA investigation on May 20, 2026.

Thus, just twelve days after receiving Vexas Corp.'s CF-28 response, on August 18, 2026, CBP notified Vexas that, "{b}ased on a review of available information, {CBP} has determined that there is reasonable suspicion of evasion of antidumping (AD) and countervailing

(CVD) duties by {Vexas}," among other importers. In the same communication on August 18, 2026, CBP also notified Vexas that CBP "shall implement the following interim measures":

- Extend liquidation of unliquidated entries that entered before the date of initiation of the investigation (May 20, 2026);
- Suspend liquidation of unliquidated entries entered on or after the date of initiation of the investigation, May 20, 2026, and reject any entry summaries and require a re-file for those entries that are within the entry summary reject period;
- Require "live" entry for all imports of LSPTV from China and Vietnam by the Importers, requiring the Importers to submit proper documentation and all duties prior to release of the merchandise;
- The AD/CVD rates are the "all others" rate (*i.e.*, a combined AD/CVD cash-deposit rate of 519.23 percent *ad valorem*) on LSPTV and parts, if the U.S. Department of Commerce has not determined a separate rate that would apply to that entry.

Email from CBP, ECF. No. 7.2.

CBP followed with its formal Notice of Initiation dated August 25, 2026. C.R. 14, BC001286-310. CBP's Initiation Notice stated that CBP "has determined that there is reasonable suspicion" of evasion and, pursuant to 19 U.S.C. §§ 1504(b) and 1623, imposed the interim measures described above. *Id.* at 2, 24, C.R. 14, BC001287, BC001309. As relevant here, CBP's Initiation Notice points to two sets of entries. First, it points to seven entries made in late 2024 and early 2025, six of which Vexas itself reclassified as subject in April and May 2025; as explained above, Vexas also explained the seventh entry to CBP's apparent satisfaction. CBP Initiation Notice at 22-23, C.R. 14, BC001307-08. CBP's notice states that it "examined" these entries in December 2025, without mention of Vexas Corp.'s reclassification and

explanation of these entries six months prior. *Id.* Second, CBP points to the five entries covered by the CF-28s, citing the very response that, as explained in Vexas Corp.'s response, established Vietnamese origin and the absence of any Chinese-origin rolling chassis. *Id.*

The Government has since stated that it will seek cash deposits only on entries made on or after August 18, 2026, not back to the May 20, 2026 initiation date. Defs.' Mot. to Dismiss & Opp'n, ECF No. 35, at 31 (Sept. 18, 2026). CBP's Initiation Notice itself, however, indicates that CBP would impose the measures from initiation forward.

**III. Facing Immediate Closure, Vexas Corp. Seeks Relief from this Court.**

Facing immediate closure if the interim measures took effect, Vexas filed this action on August 28, 2026, and moved on August 31, 2026 for a temporary restraining order and preliminary injunction, supported by declarations from its co-CEOs, dealer declarations, and financial statements. ECF Nos. 1, 7, 7.1-7.10. Bintelli, LLC and Venom EV, LLC, which challenge the same interim measures, filed related actions that the Court consolidated. The Government moved to dismiss and opposed the injunction motions, and the Coalition filed its own opposition. ECF Nos. 34-35. Vexas replied on September 25, 2026, with an updated declaration reporting that it has received approximately **[ ]** in merchandise since it filed for relief that would be subject to approximately **[ ]** in cash deposits and that Vexas is deciding daily whether it can continue operating. Pl.'s Reply Ex. 1 ¶¶ 6-8.

**SUMMARY OF ARGUMENT**

In *ICON EV LLC v. United States*, 836 F. Supp. 3d 1361 (Ct. Int'l Trade 2026) ("*ICON I*"), this Court found that the Fifth Amendment likely required CBP to give an importer notice and a meaningful opportunity to be heard before imposing interim measures. The law has not changed. And the facts in this case are substantively identical. The administrative record confirms that Vexas received no pre-deprivation notice or meaningful opportunity to be heard.

Vexas has a protected property interest at stake, including merchandise that has already arrived, is in transit, or sits in a bonded warehouse because of these unlawful interim measures. This Court should therefore grant Vexas judgment on Count I of its complaint.

CBP also violated Vexas Corp.'s Fifth Amendment due process rights by imposing the interim measures despite a near-total lack of evidence pointing to evasion. For many of the same reasons that CBP must afford notice and a meaningful opportunity to be heard before imposing these existence-threatening interim measures, it must also clear the bare-minimum hurdle of proof by a preponderance of the evidence. The reasonable suspicion standard invites too high a risk of error, subordinating Vexas Corp.'s substantial interests to a hast, underinformed decision-making where no exigency exists to justify it. Vexas is thus entitled to judgment on Count II.

Finally, in addition to these constitutional violations, CBP also violated 19 U.S.C. § 1517(e) by imposing the interim measures without a factually-supported reasonable suspicion of evasion. The administrative record shows that CBP's "reasonable suspicion" relied on an unsupported reading of the scope of the LSPTV Orders, which cover *at a minimum* a Chinese-origin rolling chassis with installed suspension and powertrain components. Moreover, CBP relied on seven entries from late 2024 and early 2025, six of which Vexas itself voluntarily reclassified as subject more than a year prior. The seventh entry did not contain subject merchandise, which Vexas explained to CBP's apparent satisfaction. CBP also relied on a CF-28 response, submitted only twelve days before its determination of reasonable suspicion, that demonstrated Vexas Corp.'s carts have Vietnamese-origin rolling chassis and that its China-origin components are not rolling chassis. Vexas Corp.'s imports from Vietnam cannot be "covered merchandise" subject to interim measures absent reasonable suspicion that they contain Chinese-origin rolling chassis, and CBP articulated none. There are thus two interconnected

issues with CBP's determination: the evidence it pointed to in the Initiation Notice failed to identify a reasonable basis for concluding that Vexas had at any point entered covered merchandise it failed to declare as such, and CBP failed to articulate any reasonable suspicion that the entries to which the interim measures apply actually contain covered merchandise. Vexas is thus entitled to judgment on Count III.

For any of these reasons, CBP violated the law in imposing the interim measures at issue, and the Court should grant judgment in Vexas Corp.'s favor.

## ARGUMENT

### I. Standard of Review

Because this action seeks review of an agency determination under 28 U.S.C. § 1581(i)(1)(D), the Court "shall review the matter as provided in section 706 of title 5." 28 U.S.C. § 2640(e). That section in turn provides that "{t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be," among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "contrary to constitutional right." 5 U.S.C. § 706(2).

The Court's jurisdiction under § 1581(i)(1)(D) and the ripeness and finality of CBP's decision to impose the interim measures were addressed in *ICON II* and in the parties' briefing on the Government's motion to dismiss, which Atlas Carts incorporates by reference. *ICON EV LLC v. United States*, Ct. No. 26-02759, Slip. Op. 26-55, 2026 WL 1470148 (Ct. Int'l Trade May 26, 2026) ("*ICON II*") Slip. Op. at 7-12; Pl.'s Reply to Gov't's Combined Mot. to Dismiss & Resp. to TRO & PI Mots. at 1-8, ECF No. 42; Pl.'s Mot. for TRO & PI at 14-18, ECF No. 7.

## II. CBP Failed to Provide Vexas Corp. Pre-Deprivation Notice or a Meaningful Opportunity to Be Heard, in Violation of the Fifth Amendment

The Court already found that CBP's decision to impose bankrupting interim measures—without any pre-deprivation notice or opportunity to be heard—likely violated an importer's right to due process on materially identical facts. *ICON I*, 836 F. Supp. 3d at 1370-71. And the record confirms that Vexas received neither notice nor an opportunity to be heard before CBP imposed the interim measures. Because CBP violated Vexas Corp.'s Fifth Amendment right to due process by failing to provide pre-deprivation notice and a meaningful opportunity to be heard, Vexas is entitled to judgment on Count I of its complaint.

As a factual matter, CBP did not provide Vexas with pre-deprivation notice prior to imposing the prohibitive interim measures. Neither the CF-28 request CBP issued to Vexas, nor any other pre-deprivation communication, referenced an EAPA allegation, an EAPA investigation, the interim measures at issue, or the concerns CBP later articulated in its Initiation Notice. C.R. 14, BC001300 (describing the June 16, 2026 CF-28 request); C.R. 54, BC009826-37 (CF-28 requests and CBP correspondence); Kopay & Messick Decl. ¶¶ 9-12. And the CF-28, without more, does not constitute notice sufficient to satisfy the Government's constitutional obligation to provide pre-deprivation notice. In *Superior Commercial Solutions*, the Court found a due process violation despite the Government's argument that CBP had earlier sent a CF-28 to which the importer had allegedly given incomplete answers. *Superior Com. Sols., LLC v. United States*, 811 F. Supp. 3d 1363, 1376-77 (Ct. Int'l Trade 2025). A request for entry documents and other materials to support the declared country of origin that does not mention the investigation or its stakes is not notice of the "pendency of the action." The Government does not – and cannot – dispute that Vexas was afforded no notice or meaningful opportunity to be heard before the interim measures were imposed. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S.

306, 314 (1950) (notice must "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

As the Court explained in *ICON I*, the Fifth Amendment affords "an importer participating in an administrative proceeding," including an EAPA proceeding, the "procedural due process right to notice and a meaningful opportunity to be heard." *ICON I*, 836 F. Supp. 3d at 1370-71 (quoting *Superior Com. Sols.*, 811 F. Supp. 3d at 1376); *Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250, 1257 (Fed. Cir. 2023). Due process generally requires such notice and a meaningful opportunity to be heard before, not after, a deprivation occurs. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("some form of pretermination hearing" is generally required). To determine whether the Government adequately afforded due process, courts consider "(1) the private interest at stake; (2) the risk of an erroneous deprivation through the procedures used and the probative value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *ICON I*, 836 F. Supp. 3d at 1370 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). For the same reasons the Court found ICON likely to succeed at the preliminary injunction stage, the Fifth Amendment required CBP to provide Vexas Corp. notice and a meaningful opportunity to be heard prior to imposition of the interim measures.

**A. The private interest at stake is concrete and substantial.**

Vexas, like ICON, "likely has a legitimate property interest in the proper assessment of imports." *Id.* at 1370. The Government has argued that importers have no protected property interest in imports, Defs.' Mot. To Dismiss & Opp'n, ECF No. 35 ("Gov't Resp.") at 24-28, but this Court found a sufficient property interest on materially identical facts. *See ICON II*, 2026 WL 1470148, at *10 n.5 (importer had "a sufficient property interest for purposes of this

action”); *ICON I*, 836 F. Supp. 3d at 1370 n.16 (citing *Phoenix Metal Co. v. United States*, Slip. Op. 24-68, 2024 WL 2891503, at *9 (Ct. Int’l Trade June 10, 2024); *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1340-41 (Ct. Int’l Trade 2021); *Am. Pac. Plywood, Inc. v. United States*, 2023 WL 4288346, at *7 (Ct. Int’l Trade June 22, 2023); *Aspects Furniture Int’l, Inc. v. United States*, 607 F. Supp. 3d 1246, 1271 (Ct. Int’l Trade 2022)). Moreover, Vexas has a property interest in the ownership, possession and operation of its business. *See United States v. All Assets of Statewide Auto Parts, Inc.*, 971 F.2d 896, 902 (2d Cir. 1992) (“Here, the property interest which has been affected by the government's actions is the ownership, possession, and operation of an ongoing business.”); *Women Med. Prof Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (“{W}e conclude that {plaintiff} did have a property interest in the continued operation of its business and that {the State} denied it procedural due process when {it} failed to offer a pre-deprivation hearing before ordering the clinic closed.”).

Vexas Corp.’s interest is concrete. The interim measures took effect on August 18, 2026. Since then, Vexas has had shipments arrive. It had shipments on the water when the measures were announced, and continues to receive shipments on a regular basis. As of September 25, 2026, Vexas had received merchandise valued at approximately **[ ]** that would be subject to approximately **[ ]** in cash deposits. Pl.’s Reply Ex. 1 ¶ 7. Payment of those cash deposits alone would put Vexas out of business, to say nothing of shipments received after September 25. The situation remains the same today: if the 519.23 percent duties are imposed on on-going, non-subject, imports from Vietnam the company will need to stop importing and wind down operations (as well as manage significant cash deposit payments that would entirely swamp the company’s available liquidity).

Vexas Corp.'s private interests are heightened here, given the existential effect of these interim measures, which the court has likened to sanctions. *Phoenix Metal*, 2024 WL 2891503, at *9 (citation omitted) (finding "The combination of cash deposits for AD/CVD duties with the live entry requirement"—akin to "sanctions"—"requires the importer to suddenly deposit a large amount of cash with Customs before it can even complete the sale for which it is importing the goods."). *See also Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 20 (1978). And, although duties may later be refunded, Vexas lacks any realistic ability "to ameliorate the interim loss," *Mathews*, 424 U.S. at 341, because it will be out of business before a refund could do any good. Kopay & Messick Decl. ¶¶ 14-26; Pl.'s Reply Ex. 1 ¶¶ 6-8; *see Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975) (a "favorable final judgment might well be useless" for a company facing imminent bankruptcy).

The Government's answer – that Vexas can avoid the measures "by simply ceasing to import," Gov't Resp. at 39 – does not diminish the interest at stake This is a truly remarkable suggestion. In essence, the Government's proposed remedy is that the company just close shop and go out of business. At bottom, Vexas will go out of business permanently if it is required to pay 519.23 percent duties on merchandise it has already imported, irrespective of its future imports. And the Government does not dispute that the private interest is high; it argues only that "effective enforcement of the trade laws outweighs any private interest." *Id.* at 30.

**B. The high risk of erroneous deprivation necessitates notice and a meaningful opportunity to be heard.**

As the Court recognized in *ICON I*, where CBP relies "primarily on {the importer's} responses to information requests that it sent before initiating its investigation," it "provide{s} no opportunity for {the importer} to supplement or explain its responses." 836 F. Supp. 3d at 1371. The same is true here. CBP's determination of reasonable suspicion relied on the CF-28

response Vexas submitted just twelve days prior, and on seven entries from late 2024 and early 2025. C.R. 14, BC001307-08; C.R. 31, BC007952-75. Vexas could have demonstrated to CBP, had it asked,[1] that six of the entries at issue were voluntarily reclassified as subject in spring 2025, and that the seventh entry covered only non-subject batteries and other components, which Vexas had previously explained to CBP's apparent satisfaction. Vexas could have demonstrated that its carts have Vietnamese-origin rolling chassis. C.R. 31, BC007964-67, ECF Nos. 7.4-7.6. Moreover, by relying on entries from late 2024 and early 2025, CBP relied on outdated (not to mention, easily explained) information. "{I}ncomplete and stale" information does not support reasonable suspicion. *United States v. Jones*, 619 F.2d 494, 498 (5th Cir. 1980); *cf. Sgro v. United States*, 287 U.S. 206, 210 (1932).

The sweep of the measures magnifies the risk of erroneous deprivation. According to CBP's indications, live entry would apply to "all imports of LSPTV from China and Vietnam" and the 519.23 percent rate to "LSPTV and parts," without regard to whether an entry contains a Chinese-origin rolling chassis. ECF No. 7.2. Vexas Corp.'s imports consist of loose and spare parts, chassis assemblies from China that are demonstrably not "rolling" chassis, and products from Vietnam that by definition cannot be subject to the orders on China. C.R. 31, BC007952-61, BC007964-67. Moreover, the exact scope of CBP's proposed interim measures is unclear, as the live entry requirement in CBP's initiation notice applies broadly to "future imports," meaning that with interim measures imposed, Vexas Corp. cannot be certain of CBP's treatment of any

[1] While the office and CBP personnel overseeing the EAPA investigation did not ask about these seven entries, it is worth noting that Vexas Corp. had previously discussed these entries with CBP officials at the time of reclassifying the six entries as subject, and the appropriate classification and treatment of the seventh entry. To date, CBP has not explained whether it consulted internally with the officials that previously reviewed these entries or whether, in CBP's view, these prior engagements with CBP supported (or detracted from) CBP's reasonable suspicion finding.

import, regardless of whether it may or may not be remotely related to CBP's investigation. An opportunity to be heard would have allowed Vexas to explain, against the plain text of the scope, why none of its imports constitute covered merchandise. *See ICON I*, 836 F. Supp. 3d at 1371 ("the LSPTV Orders quite clearly state that a rolling chassis, at a minimum, consists of a frame with suspension and powertrain components").

Moreover, as the Court also recognized, "Customs has discretion not to impose all interim measures" under 19 U.S.C. § 1517(e)(3). *Id.* at 1374. And "even where the facts are clear, the appropriateness or necessity of {adverse agency action} may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the {action} takes effect." *Loudermill*, 470 U.S. at 543. Even if it were clear that the LSPTV Orders cover all of the entries of carts at issue in the CF-28 response – which they obviously do not – the only meaningful opportunity that Vexas could have had to argue that CBP should tailor its remedy to "the strength or weakness of the suspicion," *ICON I*, 836 F. Supp. 3d at 1374, would have been a pre-deprivation opportunity to be heard. Indeed, "{W}here there is an entitlement, a prior hearing facilitates the consideration of whether a permissible course of action is also an appropriate one." *Loudermill*, 470 U.S. at 543 n.8.

**C. The public interest supports requiring notice and an opportunity to be heard before interim measures are imposed.**

Finally, the public interest supports requiring notice and an opportunity to be heard before the interim measures are imposed. *See Mathews*, 424 U.S. at 347-48. The allegation was filed on April 20, 2026. CBP initiated on May 20, 2026, and then waited until the 90th day after initiation, August 18, 2026, to impose the measures. It had four months in which it could have given Vexas a meaningful opportunity to rebut the allegation, supplement its CF-28 response, or explain why the measures should not be imposed, all while complying with 19 U.S.C. § 1517's

timelines. The Government has not suggested that doing so would impose any fiscal or administrative burden. Indeed, the Government's generalized interest in a robust enforcement regime is not burdened by affording notice in these circumstances. To the contrary, giving importers notice and a chance to respond "would tend to enhance the reliability of information and the impartiality of the decision-making process," leading to "a less pressing need for individual suits to correct constitutional error." *Butz v. Economou*, 438 U.S. 478, 512 (1978). The growing number of suits challenging these measures bears that out.

Accordingly, the Mathews factors, as well as this Court's prior decisions demonstrate that CBP violated Vexas Corp.'s Fifth Amendment due process rights by depriving it of property before providing notice and a meaningful opportunity to be heard. *ICON I*, 836 F. Supp. 3d at 1370-71; *Superior Com. Sols.*, 811 F. Supp. 3d at 1376-77. The Court should therefore grant judgment in Vexas Corp.'s favor on Count I of its complaint.

## III. The Reasonable Suspicion Standard, as Applied, Sets an Unconstitutionally Low Bar for the Imposition of the Challenged Interim Measures.

CBP violated Vexas Corp.'s Fifth Amendment right to due process by imposing the interim measures at issue under too low an evidentiary standard. The Constitution requires that CBP apply a preponderance of the evidence standard, the default standard of proof for civil administrative proceedings, to impose existential measures that will bankrupt the importer before an evasion determination can be reached.

"The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *Addington v. Texas*, 441 U.S. 418, 423 (1979) (quotation omitted). The more severe and permanent the deprivation, the higher the government's burden

of proof. *Santosky v. Kramer*, 455 U.S. 745, 758 (1982). "Generally speaking," in civil proceedings involving money, the "burden of proof is a mere preponderance of the evidence." *Addington*, 441 U.S. at 423. That standard "has long been recognized as the traditional burden of proof in civil administrative proceedings." *Rodriguez v. Dep't of Veterans Affs.*, 8 F.4th 1290, 1299 (Fed. Cir. 2021).

What evidentiary burden a particular proceeding requires "is the kind of question which has traditionally been left to the judiciary to resolve." *Woodby v. INS*, 385 U.S. 276, 284 (1966). And although 19 U.S.C. § 1517(e) specifies a reasonable-suspicion standard, that is immaterial. The "minimum requirements" of due process "are not diminished by the fact that" Congress specified "procedures that it may deem adequate for determining the preconditions to adverse official action." *Vitek v. Jones*, 445 U.S. 480, 491 (1980). The statute "neither removes" Vexas Corp.'s interest "from due process protection nor answers the question of what process is due under the Constitution." *Id.*

Applying the *Mathews* factors, the traditional preponderance standard is required when CBP imposes bankrupting interim measures. *See Addington*, 441 U.S. at 425 (applying *Mathews* to determine the appropriate evidentiary standard); *Santosky*, 455 U.S. at 757-70 (same). The reasonable suspicion standard, which as applied requires more than nothing but not much more, discounts Vexas Corp.'s significant interests while carrying too high a risk of erroneous deprivation. CBP cannot be permitted to pick which companies go out of business using the same sort of "intuition" that permits brief stop-and-frisk detentions. *Terry v. Ohio*, 392 U.S. 1, 27 (1968).[2]

---

[2] Neither CBP nor EAPA defines "reasonable suspicion." The weakness of the evidence cited and the language of CBP's Initiation Notice would appear to indicate that CBP applied a low evidentiary bar along the lines of that discussed in *Terry* and *Am. Pac. Plywood, Inc. v. United*

First, the private interest at stake is significant, as discussed above. *Mathews*, 424 U.S. at 335. "The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be condemned to suffer grievous loss." *Santosky*, 455 U.S. at 758 (quotation omitted). "Whether the loss threatened by a particular type of proceeding is sufficiently grave to warrant more than average certainty on the part of the factfinder turns on both the nature of the private interest threatened and the permanency of the threatened loss." *Id.* Here, the presumptive minimum of average certainty, proof by a preponderance of the evidence, is required, given the nature and permanency of the loss that the interim measures would effect. *See, e.g.*, *Phoenix Metal*, 2024 WL 2891503, at *9.

Second, although the Government has interests in protecting the revenue and enforcing antidumping and countervailing duty orders, those interests do not necessitate putting an importer out of business based on supposition. Reasonable suspicion allows the Government to investigate and to suspend and extend liquidation, all of which preserve its ability to collect whatever duties are ultimately due without threatening the company's existence in the meantime. *See ICON I*, 836 F. Supp. 3d at 1374. By the same token, allowing a company to continue operating and complete sales of imported goods enhances the Government's ability to collect revenue. *See Phoenix Metal*, 2024 WL 2891503, at *9; *see also Tate v. Short*, 401 U.S. 395, 399 (1971). Nor does the Government's interest involve the sort of grave, imminent danger that has justified a more relaxed evidentiary burden. *See, e.g.*, *Kashem v. Barr*, 941 F.3d 358, 381 (9th Cir. 2019) (terrorism and commercial airline safety); *Sabey v. Butterfield*, 823 F. Supp. 3d 113,

---

*States*, 2023 WL 4288346, at *9 (Ct. Int'l Trade June 22, 2023) (suggesting that only "slight evidence" or a "very small amount" is needed). *See, e.g.*, CBP Initiation Notice at 13, C.R. 14, BC001298 ("information concerning Vexas indicates that it ceased importing fully assembled LSPTVs and began importing parts and subassemblies, while available information regarding its business operations suggests a focus on assembly and sales.").

134 (D. Mass. 2026) (child abuse); *see also CEK Grp. LLC v. United States*, 633 F. Supp. 3d 1369, 1374 n.1 (Ct. Int'l Trade 2023) (no "significant factors of health and human safety present" in the EAPA context). The preponderance standard thus would not imperil the Government's interests.

Third, the risk of erroneous deprivation under a reasonable-suspicion standard is high. *Mathews*, 424 U.S. at 335. CBP initiates investigations based on allegations, typically submitted by interested parties like competitors, that "reasonably suggest" evasion. 19 U.S.C. § 1517(b)(1). The reasonable-suspicion standard may not set the evidentiary bar any higher. *See ICON EV LLC v. United States*, Slip Op. 26-88, 2026 WL 2295795, at *5 n.9 (Ct. Int'l Trade Aug. 10, 2026) ("{H}ow the standard for the imposition of interim measures under section 1517(e) is different {from the standard under section 1517(b)} is unclear."). Under this standard, CBP can initiate an EAPA investigation and mistakenly put a company out of business without any opportunity for correction, based on the uninformed word of a competitor. C.R. 5, BC000612 (the Coalition's own statement that initiation requires less than "reasonable suspicion"). Indeed, here, the risk was realized: the interim measures reach all of Vexas Corp.'s imports, including loose parts and Vietnamese-origin carts that cannot be covered by the scope of the LSPTVs Orders. By contrast, a standard that requires finding evasion likely, rather than merely possible, would require CBP to weigh both sides' evidence before demanding millions of dollars in immediate payment. *See Valmonte v. Bane*, 18 F.3d 992, 1004 (2d Cir. 1994).

True, the reasonable-suspicion standard can be appropriate in some cases. Where a meaningful post-deprivation hearing can be held, a pre-deprivation hearing need only serve as "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges . . . are true and support the proposed action."

*Loudermill*, 470 U.S. at 545-46. That standard maps well to CBP actions that are unlikely to irrevocably deprive a company of its property, such as investigating and suspending or extending liquidation. *Cf. F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232, 241-42 (1980). It does not suit these interim measures. Post-deprivation process is meaningless to a company that will not exist to use it, and CBP could not realistically provide a meaningful post-deprivation hearing in the short time between imposition of the measures and Vexas Corp.'s insolvency. *See Mullane*, 339 U.S. at 314.

In sum, as the Court observed in *ICON I*, "Customs has discretion not to impose all interim measures. The strength or weakness of the suspicion likely should affect that decision." 836 F. Supp. 3d at 1374. Less severe interim measures may not require proof by a preponderance. But because the measures imposed here effect a final deprivation, rather than merely suspend or extend liquidation, due process requires CBP to make its determination based on a preponderance of the evidence.[3] Vexas is thus entitled to judgment on Count II of its complaint.

## IV. Even if the Reasonable Suspicion Standard Passed Constitutional Muster As-Applied, CBP Lacked the Reasonable Suspicion Necessary to Impose the Challenged Interim Measures.

Finally, the record reveals that CBP lacked any evidence to support the reasonable suspicion of evasion necessary to impose the challenged interim measures. "Reasonable" suspicion is necessarily context-dependent. As this Court has explained, the "Supreme Court has long held that the reasonable suspicion needed to initiate investigations, some of which are

[3] *Ninestar Corp. v. United States*, 687 F. Supp. 3d 1308, 1335 n.21 (Ct. Int'l Trade 2024), supports this conclusion, as the administrative proceedings here are likewise bounded by due process concerns. *Royal Brush*, 75 F.4th at 1259. For the same reasons, the "substantial evidence" standard of 19 U.S.C. § 1517(c)(1)(A) is also unconstitutional, *see Rodriguez*, 8 F.4th at 1298, though the Court need not yet reach that question.

invasive enough as to potentially violate the Fourth Amendment, varies from statute to statute." *CEK Grp.*, 633 F. Supp. 3d at 1374 n.1 (collecting cases). The Government's interest here pales in comparison to the interests at stake in other contexts, such as stop-and-frisk detentions. *See Terry*, 392 U.S. at 22-24. The predicate legal questions can be complex – so complex, in fact, that EAPA instructs CBP to refer them to Commerce where appropriate. 19 U.S.C. § 1517(b)(4). And supply chains can change rapidly, particularly when antidumping and countervailing duty investigations arise – yet, there is an entirely separate procedure, administered by Commerce, for deciding whether such changes are significant enough to bring a product within the scope of an order. *See* 19 U.S.C. § 1677j.

Thus, even if due process does not require CBP to use the preponderance standard to impose these business-ending interim measures—and, as analyzed above, it does—the reasonable suspicion standard must still take context into account. Suspecting evasion based on the mere fact that an importer has entered merchandise that would have been subject to an order had it been made elsewhere, or based on an uninformed circumvention guess, cannot be reasonable. Nor is imposing interim measures on imported merchandise that is not subject to an order. CBP must instead look to the order at issue and apply its plain scope to the facts. If it has questions about scope, it is supposed to refer them to Commerce rather than decide them itself.

With this context in mind, CBP's reasonable-suspicion determination came down to essentially two purported issues: (1) seven entries from late 2024 and early 2025 that Vexas had already addressed with CBP, and (2) a CF-28 response that, read against the actual scope of the orders, shows compliance. Neither, whether considered separately or together, amounts to reasonable suspicion of evasion. And even if they somehow did, they would still not amount to

reasonable suspicion that the entries to which the interim measures apply actually contain covered merchandise.

**A. CBP misconstrued the scope of the LSPTV Orders.**

As this Court has explained, the LSPTV Orders "have a precise and limited scope." *ICON I*, 836 F. Supp. 3d at 1366. The orders cover certain Chinese-origin LSPTVs and "subassemblies thereof, whether finished or unfinished and whether assembled or unassembled." *Id.* (quoting the Orders, 90 Fed. Reg. at 38,763). An unfinished or unassembled LSPTV "covers at a minimum a subassembly, also known as a 'rolling chassis,'" with a frame or body, installed suspension components, and powertrain components installed or ready for installation. *Id.* (same). "The LSPTV Orders distinguish between Chinese-origin parts that are imported on the same bill of lading as a Chinese-origin rolling chassis—which are covered—and Chinese-origin parts that are imported on separate bills of lading—which are not covered." *Id.* Put simply, "the LSPTV Orders quite clearly state that a rolling chassis, at a minimum, consists of a frame *with* suspension and powertrain components." *Id.* at 1371. The Coalition's own statements to Commerce confirm as much. *Certain Low Speed Personal Transportation Vehicles From the People's Republic of China: Initiation of Less-Than-Fair-Value Investigation*, 89 Fed. Reg. 57,865, 57,869 (Dep't Commerce July 16, 2024).

The critical question is thus whether any Vexas-imported merchandise included (or was assembled post-entry with) a Chinese-origin frame or body that left China with installed suspension components, and powertrain components installed or installation-ready. If not, Vexas Corp.'s imports are not subject. A cart whose rolling chassis was built in Vietnam from a Vietnamese-origin frame is not a Chinese-origin subassembly, and neither is a loose part or bare frame produced in China. CBP's Initiation Notice describes the scope as covering "LSPTVs and their subassemblies, particularly rolling chassis," but it never states what a rolling chassis is and

never mentions the installed-suspension and powertrain requirement. CBP Initiation Notice at 3, C.R. 14, BC001288. With respect to Vexas imports, CBP simply concludes that certain documents "raise questions" and leave "unresolved questions." *Id.* at 22-23.

Pursuant to the actual scope of the Order, a rolling chassis built in Vietnam is not a Chinese-origin subassembly, and neither is a loose part or bare frame entered on its own (regardless of where it was manufactured). The scope reaches merchandise finished in a third country only when it contains a subassembly "produced in the subject country." 90 Fed. Reg. at 38,763. Moving production to Vietnam does not itself bring merchandise within the Orders; whether a given supply-chain change should be reached is a scope or circumvention question for Commerce. *See* 19 U.S.C. §§ 1517(b)(4), 1677j. CBP's Initiation Notice also treats Vexas Corp.'s "shift to sourcing from {a company} in Vietnam" as "significant," and lists it among the grounds for suspicion. CBP Initiation Notice at 22-23, C.R. 14, BC001307-08. But a change in suppliers is not a false statement or an omission sufficient to give rise to reasonable suspicion. *Id.* at 15. Indeed, the change in suppliers is significant, not because it evidences evasion, but rather because it confirms that the merchandise is not subject, as it is produced by a new supplier in Vietnam.

**B. The seven challenged entries do not support reasonable suspicion.**

CBP bases its reasonable suspicion in part on seven Vexas entries it "examined" in December 2025.[4] CBP then "determined" that the entries were subject to the Orders, and thus that Vexas entered covered merchandise "without declaring the entries as subject." CBP Initiation Notice at 22, C.R. 14, BC001307. But, in early 2025, Vexas voluntarily reviewed and reclassified six of these entries from type 01 (consumption) to type 03 (AD/CVD) after being

[4] To date CBP has provided no explanation or detail as to who, what, or how it "examined" these entries in December 2025, several months before the announcement of its EAPA investigation.

informed by CBP that the entries might be within the scope of the Orders. Amended CBP Form 7501s, ECF No. 7.5. Vexas Corp.'s behavior demonstrates compliance, not evasion. Evasion, as CBP defines it, requires entry "by means of" a material false statement or omission "that results in" a reduction or avoidance of duties." 19 C.F.R. § 165.1; CBP Initiation Notice at 2, C.R. 14, BC001287. An importer's voluntary correction of its own entries, months before CBP's "examination," does not constitute a material false statement or omission resulting in the reduction or avoidance of duties. Rather, it shows a good faith effort to comply with the Orders and pay lawful duties.

As to the seventh entry, which CBP also questioned in mid-2025, it contained non-subject batteries and other components. Vexas explained as much; CBP indicated it would accept the explanation and never followed up, and Vexas understood the matter to be closed. CBP Correspondence ECF No. 7.6. CBP's Initiation Notice does not mention Vexas Corp.'s voluntary reclassification of six entries or its explanation of the seventh. While it is clear that the actual facts and evidence surrounding these entries show that there is no basis to conclude that these entries support CBP's reasonable suspicion determination, it is unclear whether CBP even considered this germane and contradictory evidence – evidence the agency itself had for months prior to CBP's announcement of its investigation.

These entries are also stale, imported in late 2024 and early 2025, a year and a half before the interim measures were imposed. The interim measures apply on a forward-looking basis to entries made on or after May 20, 2026 (or, as the Government now maintains, August 18, 2026). Whatever these early entries might suggest about late 2024 and early 2025 (when the LSPTVs investigation was still ongoing), they have no bearing on merchandise imported by Vexas from its Vietnamese supply chain thereafter. Indeed, "incomplete and stale" information does not

support reasonable suspicion. *Jones*, 619 F.2d at 498; *cf. Sgro*, 287 U.S. at 210 ("the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time").

**C. Vexas Corp.'s CF-28 response demonstrates compliance, not evasion.**

CBP's Initiation Notice also relies on a CF-28 response, issued in June 2026, covering five entries of Vexas Corp.'s merchandise. Compl. ¶ 27; ECF No. 2; CBP Initiation Notice at 15, C.R. 14, BC001300. The CF-28 sought standard entry and production documentation. It did not mention the antidumping and countervailing duty orders, any EAPA allegation, any EAPA investigation, or any contemplated interim measures. CF-28 Requests, C.R. 54, BC009826-37. Vexas provided its response on August 6, 2026, and it showed, with production and sourcing documentation, that Vexas Corp.'s carts are built in Vietnam with Vietnamese-origin rolling chassis, and that the China-origin items it did import are not subject rolling chassis. C.R. 31, BC007960-61, BC007964-67. CBP allowed itself only twelve days to review a lengthy submission before announcing the interim measures. Compl. ¶ 28.

CBP did not find evidence of evasion in Vexas Corp.'s CF-28 response. CBP's Initiation Notice acknowledges that, for the Vietnamese-origin carts, Vexas supplied bills of materials, production records, inspection reports, input documentation, supplier records, and mill certificates. CBP Initiation Notice at 23, C.R. 14, BC001308. CBP's only complaint is that Vexas Corp.'s response "does not fully resolve" where certain materials came from, that one invoice carries a "China" notation, and that the mill certificates are not "clearly" tied to all inputs. *Id.* This amounts to a request for more tracing, not a basis to suspect a false statement or omission. CBP never actually requested such tracing; it did not follow up with Vexas before imposing measures. And CBP's Initiation Notice does not explains why Chinese-origin *inputs* to a Vietnamese-built frame would make the frame a Chinese-origin *subassembly* under the scope.

For the Chinese-origin entries, CBP's Initiation Notice relies on a manufacturer affidavit that "raises questions" about the merchandise's "characteristics and condition." *Id.* at 22-23. It does not find that any of those items was a rolling chassis. CBP cannot generate its own reasonable suspicion by deeming documentation incomplete, by criticizing a response for lacking information it contains, or by declining to ask the importer for clarification.

**D. CBP lacked reasonable suspicion that the entries subject to the interim measures contain covered merchandise.**

Even if there were some reasonable suspicion of evasion at some point—and there was not—CBP lacked reasonable suspicion that the entries to which the interim measures apply contained covered merchandise. EAPA limits CBP's authority to impose interim measures to entries that contain "covered merchandise." 19 U.S.C. § 1517(e)(3); *see id.* § 1517(a)(3) (defining "covered merchandise" as "merchandise that is subject to" an antidumping or countervailing duty order). EAPA does not permit CBP to expand the scope of Commerce's orders to reach carts and parts from third countries that those orders do not cover.

CBP's Initiation Notice provides that the measures apply to "covered" merchandise "from China," CBP Initiation Notice at 24, C.R. 14, BC001309, but the August 18 email from CBP imposes live entry on all LSPTV imports from Vietnam and China and the 519.23 percent rate on "LSPTV and parts," regardless of the orders' scope. ECF No. 7.2. The only Vexas entries the CBP's Initiation Notice targets are two entries of Vietnamese-declared carts, on the basis of "unresolved questions," and three entries of Chinese-origin items, on the basis of "questions." CBP Initiation Notice at 22-23, C.R. 14, BC001307-08. For the measures to pass muster, CBP needed reasonable suspicion that the affected entries contained Chinese-origin rolling chassis. It had none. Whatever suspicion might have existed as to late 2024 and early

2025 entries cannot be unjustifiably attributed to later entries, particularly once Vexas provided a fulsome CF-28 response documenting Vietnamese rolling-chassis production.

In sum, CBP lacked reasonable suspicion of evasion, in large part because it never applied the minimum definition of a rolling chassis in the LSPTV Orders. Because it lacked such suspicion, the interim measures are unlawful. Alternatively, even if CBP had reasonable suspicion as to some imports, that suspicion was not fresh enough to justify business-ending interim measures on later and current entries that Vexas had shown were not subject. Accordingly, Vexas is entitled to judgment on Count III of its complaint.

## V. The Court Should Issue Permanent Injunctive and Declaratory Relief

To remedy CBP's violations of law, the Court should permanently enjoin CBP from enforcing the interim measures imposed under 19 U.S.C. § 1517(e)(3) during the pendency of the EAPA investigation, and declare that CBP violated the law in imposing them. This Court has the authority to order any form of relief "that is appropriate in a civil action, including, but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition." 28 U.S.C. § 2643(c)(1).

First, the Court should issue permanent injunctive relief prohibiting CBP from enforcing the interim measures. The relief is limited. It would not prevent CBP from conducting its investigation (which is very much on-going), or from extending or suspending liquidation while the investigation proceeds. It would bar only the live-entry requirement, the rejection and re-filing of entry summaries, and the imposition of the 519.23 percent cash-deposit rate on Vexas Corp.'s entries. A permanent injunction may issue where a plaintiff has demonstrated "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*,

547 U.S. 388, 391 (2006). A permanent injunction is warranted here. Vexas will suffer irreparable harm absent injunctive relief, which later money damages cannot remedy: it will default on its financing obligations, lay off its approximately 50 employees, and cease operating within weeks. *See* Pl.'s Rule 56.1 Statement; Kopay & Messick Decl. ¶¶ 14-26; Pl.'s Reply Ex. 1 ¶¶ 6-8. A refund paid to a company that no longer exists is no remedy. *ICON I*, 836 F. Supp. 3d at 1372-73. And the balance of equities and the public interest favor Vexas, especially given the limited scope of the injunction it seeks and the important constitutional interests it would vindicate. *ICON I*, 836 F. Supp. 3d at 1373-74. Vexas does not seek to avoid lawful duties; it seeks to remain in business long enough to prove that its imports are not subject to the orders. Accordingly, a permanent injunction is the appropriate remedy for CBP's violations of law.

Second, the Court should issue a declaratory judgment, declaring that CBP violated the law when imposing the interim measures. A "declaratory judgment is a milder remedy which is frequently available in situations where an injunction is unavailable or inappropriate." *Ulstein Maritime, Ltd. v. United States*, 833 F.2d 1052, 1055 (1st Cir. 1987). Here, there remains a live dispute between the parties, given that the interim measures would be enforced but for the preliminary injunction. Moreover, even if the EAPA investigation concludes by the time the Court enters its judgment, declaratory relief would still be warranted to vindicate constitutional rights, *see Steffel v. Thompson*, 415 U.S. 452, 466 (1974) ("Congress plainly intended declaratory relief … to be utilized to test the constitutionality of state criminal statutes in cases where injunctive relief would be unavailable{.}"), and at least as to Count III, a resolution of which could impact further proceedings and the parties' rights.

**<u>CONCLUSION</u>**

For these reasons, the Court should grant Vexas Corp.'s motion for judgment on the agency record, permanently enjoin CBP from enforcing the interim measures imposed under 19

U.S.C. § 1517(e)(3) against Vexas, and declare that CBP's imposition of these interim measures was unlawful.

/s/ Henry D. Almond
Henry D. Almond
David J. Park
Kang Woo Lee
Archana Rao P. Vasa
Jennifer "Ellie" Farrin

*Counsel to Vexas Corporation d/b/a Atlas*

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 942-5000
Fax: (202) 942-5999
E-mail: Henry.Almond@arnoldporter.com

**Dated: November 24, 2026**

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing submission complies with the word-limitation set forth in Standard Chambers Procedure 2(B)(1), and contains 9,660 words.

Dated: November 24, 2026

/s/Henry D. Almond

**UNITED STATES COURT OF INTERNATIONAL TRADE**

VEXAS CORP. d/b/a ATLAS,

*Plaintiff,*

BINTELLI, LLC, and VENOM EV, LLC,

*Consolidated Plaintiffs,*

v.

UNITED STATES, *et al.*,

*Defendants,*

AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION,

*Defendant-Intervenor.*

Before: Jane A. Restani, Timothy C. Stanceu, and Leo M. Gordon, Judges

Consol. Court No. 26-03809-3JP

**ORDER**

Upon consideration of Plaintiff Vexas Corp.'s Motion for Judgment on the Agency Record, and upon all other papers and proceedings herein, it is hereby

**ORDERED** that Plaintiff's Motion is granted; and it is further

**DECLARED** that U.S. Customs and Border Protection's imposition of interim measures under 19 U.S.C. § 1517(e)(3) in Enforce and Protect Act (EAPA) investigation Consolidated Case 8286 against Vexas Corp. d/b/a Atlas was unlawful for the reasons stated in the opinion preceding this order; and it is further

**ORDERED** that U.S. Customs and Border Protection is permanently enjoined from enforcing against Vexas Corp. d/b/a Atlas the interim measures imposed under 19 U.S.C. §

1517(e)(3) in EAPA investigation Consolidated Case 8286, including the live-entry requirement, the rejection and re-filing of entry summaries, and the cash-deposit requirement at the combined AD/CVD rate of 519.23 percent *ad valorem*, but excluding the extension and suspension of liquidation.

Dated: ___________________
New York, New York

______________________________
Judge